**Russell Thomas BOYD, Appellant**

**v.**

**Christina Michelle PALMORE, Appellee.**

**No. 01–10–00515–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 29, 2011.

under a preponderance-of-the-evidence standard.

Patricia Ann Shackelford, Corpus Christi, TX, Russell Boyd Jr., Houston, TX, for Appellant.

Nelson T. Hensley, Cory Matthew Krueger, Hensley & Krueger, L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices SHARP and BROWN.

## OPINION

SHERRY RADACK, Chief Justice.

This is an appeal from a protective order granted by the trial court against appellant, Russell Thomas Boyd. In a single issue, Boyd challenges the legal and factual sufficiency of the evidence to support the grant of the protective order. We affirm.

## BACKGROUND

Appellee, Christina Palmore, had a daughter named Tessa with Boyd. In December 2009, after their relationship ended, Palmore and Boyd agreed to the entry of an order that established visitation and possession for Tessa.

In late February 2010, Palmore filed her first amended application for a protective order against Boyd.[1] A week later, the court issued a temporary ex parte protective order against Boyd. Two weeks after that, the trial court held an oral hearing on the application. At the hearing, Palmore testified that she was afraid of Boyd, that his "threats ha[d] become increasingly worse," that he had been "verbally abusive" to her, and that she felt like he was stalking her. Palmore then recounted several particular incidents involving Boyd that caused her to fear for her safety.

She testified that in October 2009 (the "October 2009 incident"), Boyd followed her to her mother's office in Travis County, got out of his car, blocked her with his body so she could not leave, and ended up jumping onto the hood of her car. Palmore stated that she feared for her life

---

1. This application included a request for both a temporary ex parte protective order and a standard protective order following full notice and hearing.

during this incident and reported it to the police. She affirmed, however, that Boyd was also delivering medication for Tessa at the time and that this was the only incident in which Boyd had ever done "anything remotely physical" to her.

Palmore further testified that Boyd hired a private investigator named Jerry, who had been following her since October 2009. Although she had never seen Jerry, Boyd had sent her text messages that were intended for Jerry. Included among these were bizarre messages apparently discussing automobile tracking devices and video of Tessa taken inside of Palmore's parents' home. Palmore also stated that Boyd had told her there were hidden cameras in her house. As a result of these communications, Palmore felt like she was "being watched."

Palmore also recounted an incident from January 2010 in which Boyd faked his own suicide (the "January 2010 incident"). Pretending to be an individual named Alicia, Boyd sent Palmore a series of bizarre messages, including the following:

I'm starting to really worry about [Boyd].

Tried the key but he's got the top lock [of his apartment door] locked. Please tell me what's going on. This man loves you more than anything. Please tell me if you've heard from him.

You really are a cold heartless bitch.

Was on the phone with sheriff. They're on their way here. Neighbor heard a gunshot an hour ago.

Sheriff is here. What the hell did you do to him to make him do this?

Shot his self [sic] in the head. I hope you're really happy now. They said he's holding a picture of him and a little girl and a red head.

Hope you're happy now. You won't have to worry about him anymore.

That man loved you more than anything and all you've ever done is hurt him. Now you can't anymore.

EMS says he's got a pulse and they're working on him.

At some point during this incident, Palmore called the number from which she was receiving the messages and discovered that they were being sent from Boyd's work phone. Toward the end of the exchange, Boyd apparently conceded his identity, telling Palmore that he wanted "a chance to sit down and talk to [her] about everything." He also apologized for the fake text messages, telling Palmore that it was "the only way [he knew] to get [her] to talk to [him]."

Finally, Palmore also testified that Boyd threatened to commit suicide again in mid-February 2010 and told her he had been admitted to a mental hospital.

Boyd testified that he had admitted himself to a mental hospital for five days in February 2010 in order to get help for his depression. He claimed to have been released with no restrictions and to be on medication. Boyd also maintained that an individual named Lisa Strummond—not he—had sent the text messages during the January 2010 incident. Finally, Boyd admitted to having hired a friend as a private investigator to follow Palmore between October 8 and November 11, 2009. He stated, however, that the friend was no longer authorized to do so.

Two individuals testified on Boyd's behalf. John Eshelman, a longtime friend, testified that he did not feel Boyd would hurt himself and had never seen him hurt Palmore or Tessa. Boyd's sister, Kimberly White, concurred and stated that, in her view, Boyd was a nonviolent person who had a loving relationship with his daughter. She noted that Palmore had never

informed her of any violent acts committed by Boyd.

At the conclusion of the hearing, the trial court granted Palmore's motion for a protective order. In its order, the court specifically found that Boyd had committed family violence and that family violence was likely to occur in the future. Boyd appeals the grant of this order.

## LEGAL AND FACTUAL SUFFICIENCY

In his sole issue, Boyd claims that the acts which were proven as the basis for the protective order do not qualify as "family violence" and thus that the trial court's finding that family violence has occurred in the past and is likely to occur in the future is not supported by legally or factually sufficient evidence.

### Standards of Review

 When the trial court acts as a fact-finder, we review its findings under the legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex.2000); *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex.App.-Houston [1st Dist.] 2004, no pet.). When a party who does not have the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005); *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998)). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *Hildebrandt*, 265 S.W.3d at 27 (citing *Hag-gar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex.2005)).

 In reviewing a factual sufficiency challenge, we examine the entire record and consider and weigh all the evidence, both in support of, and contrary to, the challenged finding. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Vongontard*, 137 S.W.3d at 112. Having considered and weighed all the evidence, we should set aside the verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We cannot merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

### Family Code Provisions Concerning Protective Orders

A court shall render a protective order if the court finds that family violence (1) has occurred and (2) is likely to occur in the future. TEX. FAM.CODE ANN. §§ 81.001, 85.001 (Vernon 2008). "Family violence" is defined, in pertinent part, as

> [A]n act by a member of a family ... against another member of the family ... that is intended to result in physical harm, bodily injury, assault, or sexual assault *or* that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

TEX. FAM.CODE ANN. § 71.004(1) (Vernon 2008) (emphasis added). "Family" is defined to include individuals who are par-

ents of the same child. TEX. FAM.CODE ANN. § 71.003 (Vernon 2008).

■ Given the remedial nature of Title IV of the Texas Family Code (of which the forgoing sections are a part), courts should broadly construe its provisions so as to effectuate its humanitarian and preventative purposes. *See, e.g. United Fire & Cas. Co. v. Boring & Tunneling Co. of Am.*, 321 S.W.3d 24, 28 (Tex.App.-Houston [1st Dist.] 2010, pet. denied).

### Analysis

#### A. Evidence of Past Family Violence

Boyd first contends that the evidence is legally and factually insufficient to show that he committed family violence in the past. Although Boyd does not separate his legal and factual sufficiency arguments, we will do so for purposes of clarity. *See Vongontard*, 137 S.W.3d at 113.

#### 1. Legal Sufficiency

■ The evidence, viewed in the light most favorable to the trial court's finding, shows that in October 2009, Boyd followed Palmore to her mother's office, blocked her car, and jumped on her hood. Palmore's own testimony shows that these actions caused her to fear for her life and call the police. The October 2009 incident, Palmore's call to the police, and her testimony about her fear is legally sufficient evidence that Boyd committed "an act ... that [was] a threat that reasonably placed [Palmore] in fear of imminent physical harm, bodily injury, [or] assault," thereby satisfying the definition of "family violence." *See* TEX. FAM.CODE ANN. § 71.004(1).

We reject Boyd's arguments, which we consider in turn. First, he argues that the evidence is legally insufficient to show family violence because he never touched Palmore during the October 2009 incident and there was no evidence that he ever committed any act that was intended to result in physical harm, bodily injury, assault, or sexual assault to Palmore. Boyd further points out that although Palmore claimed that he threatened her, she provided no evidence of any *words* rising to the level of a threat that reasonably placed her in fear of imminent harm. We disagree, however, because the act of blocking Palmore's car with his body and jumping on its hood constituted, in itself, a threat satisfying the second part of the definition of "family violence," even though no actual physical harm resulted. *See Bedinghaus v. Adams*, No. 2–08–096–CV, 2009 WL 279388, at *3 (Tex.App.-Fort Worth Feb. 5, 2009, no pet.) (mem. op.) (pointing out that because of the disjunctive "or" in the definition of "family violence," "a threat without an actual act of violence" is sufficient); *Clements v. Haskovec*, 251 S.W.3d 79, 85 (Tex.App.-Corpus Christi 2008, no pet.) (holding that appellant's act of raising his fist and making other threats was sufficient to constitute "family violence" even though he never actually struck his daughter or wife).

■ Boyd's second argument is based on Palmore's allegation, contained in her first amended application for a protective order (filed on February 25, 2010), that family violence had occurred during the previous 30 days. Since the October 2009 incident occurred outside of this 30-day period, Boyd argues that it is legally insufficient to support the trial court's finding of family violence. However, no statutory provision prohibits a court from basing a finding of family violence on an act occurring more than 30 days before the filing of an application for a protective order. The only reference to a 30-day period in Title IV of the Family Code occurs in a section dealing with the findings necessary for a court to render a temporary ex parte order excluding a party from a residence.

*See* TEX. FAM.CODE ANN. § 83.006(b) (Vernon 2008). It is true that Palmore's first amended application contained two applications—an application for a temporary ex parte order (including an order excluding Boyd from her residence) and an application for a standard protective order to be rendered after full notice and hearing. However, the language referring to the 30–day period appears only in the section of the application containing Palmore's request to exclude Boyd from her residence as part of the temporary ex parte order. Because Boyd does not challenge the court's grant of the temporary ex parte order, we reject this argument.

In a third argument, Boyd contends that evidence of the October 2009 incident is legally insufficient because Palmore did not mention it among the acts allegedly constituting family violence in her amended application or in her attached affidavit. However, an application for a standard protective order need only contain (1) the name and county of residence of the applicant, (2) the name and county of residence of the individual alleged to have committed family violence, (3) the relationship between the applicant and the individual, and (4) a request for a protective order. TEX. FAM.CODE ANN. § 82.004 (Vernon 2008). Palmore's amended application undoubtedly met these requirements. We therefore hold that evidence of the October 2009 incident is legally sufficient to support a finding of past family violence.[2]

### 2. Factual Sufficiency

In his brief, Boyd makes several points concerning the October 2009 incident. He notes that he never touched Palmore during the incident and did not damage her car. He highlights White's testimony that Palmore never mentioned any fear of Boyd or any past violent acts committed by him. He also points out that the incident occurred months before Palmore applied for a protective order, and that the two successfully negotiated agreed visitation of Tessa after the incident occurred. The record also shows that Boyd was at Palmore's mother's office, at least in part, to deliver medicine to Tessa.

However, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Thus, the trial court was free to place greater weight on Palmore's testimony and conclude that Boyd's actions during the October 2009 incident placed her in reasonable and imminent fear for her safety. The evidence supporting the trial court's finding that family violence had occurred is not so weak as to be clearly wrong or manifestly unjust and is therefore factually sufficient.

### B. Evidence of Likelihood of Future Family Violence

Boyd next contends that there is legally and factually insufficient evidence to show

---

2. Two other points bear mentioning as well. First, Palmore filed her first amended application on February 25 and the temporary ex parte protection order was not rendered until March 3. Section 82.0085 is therefore inapplicable. *See* TEX. FAM.CODE ANN. § 82.0085 (Vernon 2008) (requiring that an application for a protective order filed before the expiration of a previously rendered protective order contain "a description of the threatened harm that reasonably places the applicant in fear of

imminent physical harm, bodily injury, assault, or sexual assault"). Second, Boyd argues that since he was not served with Palmore's original application, any acts allegedly constituting family violence mentioned therein, but not mentioned in the first amended application or introduced at the hearing, should not be considered in support of the protective order. Because our holding does not rely on any such evidence, we need not reach this issue.

that he was likely to commit an act of family violence in the future.

### 1. Legal Sufficiency

Boyd argues that the evidence is legally insufficient because it fails to show that he engaged in a pattern of threats of violence or a pattern of violent acts. He contends that the October 2009 incident was an isolated event and that none of the other acts complained of by Palmore rose to the level of family violence.

The statutory language of Title IV does not require that a likelihood finding be based on more than one act of family violence. *See* TEX. FAM.CODE ANN. §§ 81.001, 85.001. On the contrary, courts have recognized that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *In re Epperson*, 213 S.W.3d 541, 544 (Tex.App.-Texarkana 2007, no pet.); *accord Banargent v. Brent*, No. 14–05–00574–CV, 2006 WL 462268, at *1–2 (Tex.App.-Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem. op.). Under this principle, Boyd's commission of an act of family violence during the October 2009 incident would permit a finding that he was likely to engage in future family violence.

Boyd points out that there was a pattern of family violence in both *Teel v. Shifflett*, 309 S.W.3d 597, 604 (Tex.App.-Houston [14th Dist.] 2010, denied), and *Clements*, 251 S.W.3d at 87–88. But, while those cases can be construed as holding that a pattern of family violence is sufficient to support a likelihood finding, neither case held that such a pattern was a necessary prerequisite to such a finding.

Viewing it in the light most favorable to the trial court's finding, as we must, the evidence shows that, in the months following the October 2009 incident, Boyd continued to harass Palmore via text messaging. Combined with the violence that occurred during the October 2009 incident itself, this provides more than a scintilla of evidence that, if not enjoined, Boyd would commit acts of family violence against her in the future. Thus, the trial court's finding is supported by legally sufficient evidence.

### 2. Factual Sufficiency

Boyd highlights several pieces of evidence that tend to challenge the trial court's finding that future family violence was likely to occur. These include evidence that Boyd (1) never physically hurt Palmore, (2) worked out an agreed visitation schedule for Tessa in December 2009, (3) voluntarily sought treatment for depression in February 2010, was put on medication, and was released without restrictions, (4) lived several hours away from Palmore and saw her only when they exchanged Tessa, and (5) did not contact Palmore at all for several weeks before the hearing.

Against each of these stand the following considerations. First, although Boyd never physically harmed Palmore, evidence of the October 2009 incident in which he committed family violence was uncontroverted.[3] Second, while Pal-

---

**3.** Boyd references *Clements,* which stated that "there is case law which suggests that [a single, isolated act of violence in the past] is insufficient for a finding that future violence is likely to occur." 251 S.W.3d at 87–88. Besides being dicta, this assertion was ultimately based on the fact that the "past is prologue" principle derives from parental termination and child custody cases. Those cases, in turn, require a heightened standard of review. *See* TEX. FAM.CODE § 161.001 (Vernon 2008) (in suit to terminate parent-child relationship, each finding required for termination must be based on "clear and convinc-

more affirmed that she worked out a visitation schedule for Tessa with Boyd, she added that "I wouldn't say that I felt safe doing it." Third, the only proof that Boyd received psychological treatment was provided by his own testimony and that of White, his sister. When asked about that claim, Palmore expressed skepticism, stating that "he says he did [check himself into a mental hospital] but I don't know for sure." Fourth, the October 2009 incident occurred in Travis County—a substantial distance from Harris County, where Boyd was living at the time. It also occurred at a time when Boyd was ostensibly seeking to deliver Tessa's medicine to Palmore. Fifth, the fact that Boyd did not contact Palmore in the immediate lead-up to the hearing may have been due to the effectiveness of the protective order proceedings (including the trial court's grant of the temporary ex parte protective order) rather than to a voluntary subsidence on his part. Palmore's statement that she was still afraid of Boyd certainly provided support for this view.

After evaluating all of the evidence, judging the credibility of the witnesses, and weighing the testimony, the trial court could have reasonably concluded that Boyd was likely to commit another act of family violence. Because the evidence supporting the trial court's finding is not so weak as to be clearly wrong or manifestly unjust, we overrule Boyd's factual sufficiency challenge. *See Bedinghaus*, 2009 WL 279388, at *3–4 (evidence was factually sufficient to support trial court's finding that future violence was likely to occur—despite defendant's testimony that his actions were taken out of context and that he never threatened nor intended to cause complainant physical harm—as there was testimony that defendant sent excessive and sometimes threatening text messages to victim, hired a private investigator to follow her, and sent the private investigator's reports to the victim).

## CONCLUSION

We affirm the protective order of the trial court.

Justice SHARP, dissenting.

JIM SHARP, Justice, dissenting.

Russell Thomas Boyd's sole appellate point argues that the acts proven as the basis for the protective order do not qualify as family violence and thus the grant of a protective order against him is not supported by legally or factually sufficient evidence.

In an obviously misguided effort to communicate with his child's mother, Boyd, a man with emotional and other issues (including a voluntary commitment to a mental health facility), had messages sent to the woman that falsely reported that he had committed suicide; he told her (whether truthfully or not is not a part of the record before us) that she was under surveillance (tracking devices on her vehicle; private investigator; hidden video cameras); and he jumped atop the hood of her car to compel her to stop and talk to him. This case rises or falls on the determination by the trial court that jumping onto the hood of a vehicle is an act "intended to result in physical harm, bodily injury, assault, or sexual assault" (of another ... not the 'hood jumper') and/or "is a threat that reasonably places the (family or

---

ing evidence"); *see also In re C.H.*, 89 S.W.3d 17, 25–26 (Tex.2002) (affirming heightened factual-sufficiency review in such cases). Factual sufficiency review of family violence protective orders, however, does not entail such a heightened standard. Thus, an episode of family violence, coupled with continued harassment, permits an inference that family violence is likely to occur in the future.

household) member in fear of imminent physical harm, bodily injury, assault, or sexual assault...." TEX. FAM.CODE ANN. § 71.004 (Vernon 2002).

The operative word here is *reasonably*. I would hold that one distraught ex-lover's attempt to block the path of a vehicle traveling sufficiently slowly as to allow one to jump upon the vehicle's hood cannot *reasonably* be construed or characterized as "intended to result in physical harm, bodily injury" of the one in the vehicle driving, or as a threat to that driver's "imminent physical harm [or] bodily injury...." [1] *See* TEX. FAM.CODE ANN. § 71.004 (Vernon 2002). Yet the majority opinion characterizes this over-wrought stab at drama as "family violence." Is "hood jumping" to be forevermore enshrined in Texas jurisprudence as an act of family violence? To do so would not be mere overreaching, but grasping in a judicial sense as sadly as Boyd's own failed attempt at meaningful face time.

Although Palmore testified about "increasingly worse" threats and "verbal abuse," the record is devoid of testimony descriptive of any such threats. She did not, for instance, testify that Boyd threatened her with "imminent physical harm, bodily injury, assault, or sexual assault." *See* TEX. FAM.CODE ANN. § 71.004 (Vernon 2002). As there is no evidence of what constituted the threat, there can be no evidence that whatever "it" was could *reasonably* place a family member in fear of "imminent physical harm, bodily injury, assault, or sexual assault," notwithstanding her testimony that she was "scared for her life." *See* TEX. FAM.CODE ANN. § 71.004 (Vernon 2002).

The majority affirms the trial court's order. As I do not read the record as supporting a finding that the acts of stand- ing in front of a vehicle or of jumping up onto the hood of a car (no matter the credibility or weight one's testimony describing such acts is to be given) can cause, or place the driver of the vehicle in *reasonable* fear of, imminent physical harm, bodily injury or an assault, I respectfully dissent.

## FACTS

Christina Palmore had a child with Boyd. They had never married, but had lived together. In December 2009, after their relationship ended, Palmore and Boyd agreed to the entry of an order that established visitation for the child.

In February 2010, Palmore filed an application for a protective order against Boyd. The trial court held an oral hearing on the application. Palmore testified that she was afraid of Boyd and wanted a protective order to protect both her and her 19–month–old daughter. She further testified to the following acts by Boyd:

1. "Increasingly worse" threats and "verbal abuse" (Palmore never testified as to what Boyd said that threatened her or described the verbal abuse);

2. "Talk of possible hidden cameras in my house;"

3. An October 2009 incident in which Boyd blocked her with his body from leaving and jumped on the hood of her car;

4. Text messages that falsely reported that Boyd had committed suicide;

5. Boyd's report to her that he had voluntarily admitted himself to a mental hospital; and

---

1. The same cannot be said for Mr. Boyd, whose lovelorn stunt could easily have result- ed in "physical harm or bodily injury ..." to himself.

6. Boyd's report to her that he was having a private investigator follow her.

Palmore's testimony did clarify that the incident in which Boyd jumped on the hood of her car was the only "remotely physical" incident between them and that he had never caused her physical or bodily injury or assaulted her.

After an oral hearing, the court, specifically finding that Boyd had committed family violence and was likely to do so in the future, granted the motion for protective order. Boyd appeals the grant of this order.

## LEGAL AND FACTUAL SUFFICIENCY

In his sole issue, Boyd claims that the acts which were proved as the basis for the protective order do not qualify as family violence and thus the trial court's finding that family violence has occurred in the past and is likely to occur in the future is not supported by legally or factually sufficient evidence.

### A. Standard of Review

When the trial court acts as a fact-finder, we review its findings under the legal and factual sufficiency standards. *In re Doe,* 19 S.W.3d 249, 253 (Tex.2000); *Vongontard v. Tippit,* 137 S.W.3d 109, 112 (Tex.App.-Houston [1st Dist.] 2004, no pet.). When a party who does not have the burden of proof at trial challenges the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005); *City of Houston v. Hildebrandt,* 265 S.W.3d 22, 27 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) (citing

*Assoc. Indem. Corp. v. CAT Contracting Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998)). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *Hildebrandt,* 265 S.W.3d at 27 (citing *Haggar Clothing Co. v. Hernandez,* 164 S.W.3d 386, 388 (Tex.2005)).

In reviewing a factual sufficiency complaint, we must first examine all of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). Having considered and weighed all the evidence, we should set aside the verdict only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). We cannot merely substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Hollander v. Capon,* 853 S.W.2d 723, 726 (Tex. App.-Houston [1st Dist.] 1993, writ denied).

### B. Family Code Provisions Concerning Protective Orders

A court shall render a protective order if the court finds that family violence has occurred and is likely to occur in the future. TEX. FAM.CODE ANN. § 81.001 (Vernon 2002). Family violence is defined as:

(1) an act by a member of a family ... against another member of the family ... that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself ...

TEX. FAM.CODE ANN. § 71.004 (Vernon 2002).

"Family" is defined in pertinent part as individuals who are former spouses of each other or who are parents of the same child. Tex. Fam.Code Ann. § 71.003 (Vernon 2002). "At the close of a hearing on an application for a protective order, the court shall find whether: (1) family violence occurred; and (2) family violence is likely to occur in the future." Tex. Fam.Code Ann. § 85.001 (Vernon 2002).

### C. Analysis

Here, there is no evidence that Boyd ever caused Palmore physical harm or bodily injury, and apart from the majority's characterization of the "hood jumping," there is no evidence that he took actions intending to result in such harm or injury. Furthermore, although Palmore testified that she was "scared" of Boyd because "[h]is threats ha[d] become increasingly worse," she offered no testimony as to what it was that Boyd threatened to do or that such "threats" placed her in fear of "imminent physical harm, bodily injury, assault, or sexual assault...." See Tex. Fam.Code Ann. § 71.004 (Vernon 2002). In fact, Palmore did not testify as to any word or action that might indicate that Boyd had in the past or would in the future pose a threat of physical harm, bodily injury, assault, or sexual assault.

The text messages Boyd apparently caused to be sent to Palmore that reported he had committed suicide cannot be construed as a threat to Palmore's own safety. Nor does the fact that Boyd voluntarily admitted himself to a mental hospital reflect that he either has in the past or will in the future place her in fear of such harm.

Palmore did, however, testify that she was "in fear for her life" when Boyd jumped on the hood of her car. But, as she later testified, this was the only "remotely physical" incident between Boyd and her. As noted previously, this incident was not an act capable of causing physical harm or bodily injury, and there was no testimony it was "intended to result in physical harm, bodily injury, an assault, or sexual assault" and thus, did not and could not constitute "family violence" as defined by the Family Code. See Tex. Fam.Code Ann. § 71.004 (Vernon 2002).

Rather, the actions to which Palmore testified are in the nature of harassment. Harassment may at some point become an active threat. See Thompson v. Thompson–O'Rear, No. 06–03–00129–CV, 2004 WL 1243080, at *3 (Tex.App.-Texarkana June 8, 2004, no pet.) (mem. op.). Considering the absence of any threat of physical harm or of any continuing physical confrontation, as well as the lack of testimony concerning threats of physical harm, I would conclude that the harassment described herein does not rise to the level of an "active threat." See Gonzalez v. Rangel, No. 13–05–641–CV, 2006 WL 2371464, at *2 (Tex.App.-Corpus Christi Aug. 17, 2006, no pet.) (mem. op.) (stating that Family Code provides that only threats of "imminent physical harm, bodily injury, assault, or sexual assault" constitute family violence; any other sort of threat does not support finding of family violence).

Moreover, the record contains no evidence that family violence "is likely to occur in the future." See Tex. Fam.Code. Ann. § 85.001(a)(2). Because Palmore also failed to establish the second element required by the Family Code, I would hold the evidence to be legally insufficient to support the trial court's order, see Gipson v. Huerta, No. 13–02–00490–CV, 2003 WL 21666140, at *2 (Tex.App.-Corpus Christi July 17, 2003, no pet.) (mem. op.) (holding evidence legally insufficient to support protective order when appellee failed to produce evidence that family violence was likely to occur in future), sustain appel-

lant's sole issue, reverse the trial court's protective order, and render judgment that appellee's request for a protective order is denied.