

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00350-CV

Ron **LUMMUS**,
Appellant

v.

Benita **LUMMUS**,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 22-01-0054-CVA
Honorable Bob Brendel, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
            Patricia O. Alvarez, Justice
            Beth Watkins, Justice

Delivered and Filed: January 18, 2023

AFFIRMED

Appellant Ron Lummus appeals a protective order rendered in favor of his wife, appellee

Benita Lummus. We affirm.

### BACKGROUND

At the time of the proceedings that led to this appeal, Ron and Benita had separated but

had not yet divorced. Immediately before their separation, the couple and their two young children

lived in Oklahoma. On January 15, 2022, while Ron was in custody after an arrest unrelated to this

dispute, Benita and the children left the marital home in Oklahoma and moved in with Benita's parents in Atascosa County, Texas.

On January 27, 2022, Benita filed an application for a protective order in the underlying cause number, 22-01-0054-CVA. Benita's application and supporting affidavit, which she filed in the 81st/218th Judicial District Court of Atascosa County, alleged that Ron had engaged in family violence. The trial court signed a temporary ex parte protective order on January 31, 2022, extended that order during a February 15, 2022 hearing at which Ron personally appeared, and extended the order a second time on March 1, 2022. Each version of the order restrained Ron from, inter alia, "communicating in any manner with [Benita], except through [Ron's] attorney or a person appointed by the Court."

Approximately three weeks after Benita sought a protective order, she filed a petition for divorce in the County Court at Law of Atascosa County. The day after Benita filed for divorce, Ron filed his own divorce petition in an Oklahoma court.

On March 7, 2022, the 81st/218th Judicial District Court of Atascosa County held a hearing on Benita's application for a protective order. Both Ron and Benita appeared and presented evidence. On May 16, 2022, the trial court signed a protective order. In its order, the trial court found that Ron had committed family violence against Benita in the past, that family violence was likely to occur in the future, and that a protective order was "for the safety and welfare and in the best interest of [Benita], and is necessary for the prevention of family violence." Ron now appeals.

**ANALYSIS**

***Subject Matter Jurisdiction***

In his first issue, Ron argues the trial court lacked subject matter jurisdiction to sign a protective order because "[a]t the time of the hearing for the protective order, [Benita] had resided in Texas for less than 60 days."

*Standard of Review and Applicable Law*

"Subject matter jurisdiction concerns the kinds of controversies a court has the authority to resolve as determined by the constitution, jurisdictional statutes, and the pleadings." *Taylor v. Speck*, 308 S.W.3d 81, 84 (Tex. App.—San Antonio 2010, no pet.). A challenge to the trial court's subject matter jurisdiction presents a legal question we review de novo. *See, e.g.*, *In re A.R.G.*, 645 S.W.3d 789, 794 (Tex. App.—San Antonio 2022, no pet.).

*Application*

As support for his assertion that the trial court lacked subject matter jurisdiction over Benita's application for a protective order, Ron relies solely on section 6.301 of the Texas Family Code. Section 6.301 provides that "[a] suit for divorce may not be maintained in this state" unless at least one of the parties meets specified residency requirements. TEX. FAM. CODE ANN. § 6.301. Ron contends the evidence shows neither he nor Benita met those residency requirements at the time the trial court signed the protective order.

By its plain language, section 6.301 applies only to "[a] suit for divorce[.]" *See id.*; *see also In re B.C.*, 592 S.W.3d 133, 136 (Tex. 2019) (per curiam) (we apply the plain language of a statute). The record does not support a conclusion that Benita sought or obtained a protective order as part of a suit for divorce. Benita filed her application for a protective order—and the trial court granted that relief—in cause number 22-01-0054-CVA in the 81st/218th Judicial District Court of Atascosa County. Benita filed her petition for divorce approximately three weeks later, in cause number 22-02-0084-CVA in the County Court at Law of Atascosa County. Accordingly, the record shows the protective order and the divorce are two separate proceedings.

"Absent a clear showing to the contrary, we presume that statutes do not entail . . . jurisdictional consequences." *S.C. v. M.B.*, 650 S.W.3d 428, 434 (Tex. 2022). Ron cites no constitutional, statutory, or other authority establishing that section 6.301's residency

requirements stripped the trial court of subject matter jurisdiction over Benita's application for a protective order under these circumstances, and we have found none.[1] *See id.*; *Taylor*, 308 S.W.3d at 84. We therefore overrule Ron's first issue.

### *Legal and Factual Sufficiency*

In his second issue, Ron argues the evidence is legally and factually insufficient to support the findings necessary to support a protective order.

#### *Standard of Review and Applicable Law*

"A court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAM. CODE ANN. § 81.001; *see also* TEX. FAM. CODE ANN. § 85.001(b). "[T]he definition of family violence includes not only intended physical harm but also ' . . . a threat that reasonably places the [family] member in fear of imminent physical harm[.]'" *Reyes v. Reyes*, No. 04-02-00758-CV, 2003 WL 22238914, at *2 (Tex. App.—San Antonio Oct. 1, 2003, no pet.) (mem. op.) (quoting TEX. FAM. CODE ANN. § 71.004(1)). A pattern of past threats or violent conduct can support a finding that family violence is likely to occur in the future. *See In re Epperson*, 213 S.W.3d 541, 543–44 (Tex. App.—Texarkana 2007, no pet.).

"When the trial court acts as a fact-finder, we review its findings under the legal and factual sufficiency standards." *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When an appellant challenges the legal sufficiency of the evidence supporting a

---

[1] The Family Code shows the legislature has contemplated that a party may properly seek a protective order before filing for divorce:

> If an application for a protective order is pending, a court may not dismiss the application or delay a hearing on the application on the grounds that a suit for dissolution of marriage or suit affecting the parent-child relationship is filed after the date the application was filed.

TEX. FAM. CODE ANN. § 85.061.

finding on which he did not bear the burden of proof below, he must establish that no evidence supports the challenged finding. *Abrams v. Salinas*, 467 S.W.3d 606, 613–14 (Tex. App.—San Antonio 2015, no pet.). "If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails." *Id.* at 614 (internal quotation marks omitted); *see also Boyd*, 425 S.W.3d at 429 (applying sufficiency analysis to review of protective order). In a factual sufficiency challenge, we consider all the evidence and may set aside the challenged finding only if it is so against the great weight and preponderance of the evidence as to render the finding clearly wrong and unjust. *Abrams*, 467 S.W.3d at 614; *Boyd*, 425 S.W.3d at 429.

*Application*

During the March 7 hearing, Benita testified that she sought a protective order because she was afraid for herself and the children. She stated Ron has told her "[c]ountless times" that if she left him, he would kill her and her parents and take the children. Benita also testified about several incidents of violence or threats of violence that allegedly occurred during the marriage:

- On one occasion when Benita was driving the couple's truck, Ron "kept trying to take the [steering] wheel from [her]" while she tried "to do anything that [she] could to get him off of [her]." Benita told the trial court that during that incident, Ron "was ready to kill [her] and everybody in that car."

- When Benita was seven months pregnant with the couple's first child, Ron "sat on [her] stomach," pinned her arms above her head, and "dug his knees into [her] sides" because he was angry that she refused to answer a question he had asked.

- Ron once dragged Benita out of their bed and tried to break her wrist, leg, ankle, and toes.

- The morning after a party at their home, Ron screamed at Benita, accused her of cheating, and threatened her life and the lives of her parents.

Benita testified that the children, who were four and two years old at the time of the hearing, were present during some of the incidents she described. She stated the older child "would try to fight

his dad off" and "would scream and say, 'Daddy, stop' or 'Stop.'" She also testified that she had seen Ron "purposely trip [the children], hit them in their head, push them."

As noted above, the temporary protective orders explicitly barred Ron from contacting Benita except through his attorney or a court-appointed intermediary. Benita testified, however, that after Ron received notice of the temporary order, he continued to call and text her. She stated Ron sent her text messages informing her that he was in Atascosa County and "wanted to come see [her] and the kids[.]" She also testified that the week before the hearing, she received a phone call from "a third party" who "said they were representing [Ron]," and "let [her] know that [Ron] was on the third line."

In his brief, Ron acknowledges Benita's testimony that he threatened her and was physically violent toward her. He contends, however, that Benita "presented no evidence of any of these incidents" because she did not present photographs, medical records, or other documentary evidence to corroborate her testimony. Ron cites no authority establishing that Benita was required to present documentary evidence to substantiate her testimony, and we have previously held that an applicant's testimony was sufficient to support a protective order. *See Reyes*, 2003 WL 22238914, at *1–2.

Ron also notes that he testified Benita's claims of threats and physical abuse were not true, and he points out that his sister, Tiffany, disputed Benita's account of the incident in the truck. However, the trial court, as factfinder, was the sole judge of the witnesses and their credibility, and it had discretion to believe Benita's testimony over Ron's and Tiffany's. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *Reyes*, 2003 WL 22238914, at *2.

Benita described several incidents of alleged physical violence; stated Ron had told her he would kill her and her parents if she left him and that she believed those threats; and testified that Ron continued contacting even after the trial court ordered him not to do so. This testimony was

legally and factually sufficient to support the trial court's findings that family violence had occurred in the past and was likely to occur in the future. *See* TEX. FAM. CODE §§ 71.004(1), 81.001, 85.001; *In re Epperson*, 213 S.W.3d at 543–44; *Reyes*, 2003 WL 22238914, at *1–2. Accordingly, we overrule Ron's second issue.

## CONCLUSION

Having overruled both of Ron's issues, we affirm the trial court's order.

Beth Watkins, Justice