

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00379-CV

Melanie Lynn **HAGNER**,
Appellant

v.

Juan Antonio **VALDEZ** Jr.,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2023-CI-01683
Honorable Rosie Alvarado, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:     Rebeca C. Martinez, Chief Justice
        Lori Massey Brissette, Justice
        Velia J. Meza, Justice

Delivered and Filed: March 26, 2025

AFFIRMED

Appellee Juan Antonio Valdez, Jr. applied for a family violence protective order on behalf of himself against appellant Melanie L. Hagner. *See* TEX. FAM. CODE ANN. § 81.001 ("A court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred."). After a final protective order hearing during which Hagner personally appeared and was represented by trial counsel, the trial court signed a protective order. In four issues, which we reorder, Hagner, proceeding pro se on appeal, complains that: (1) the trial court

reversibly erred by not signing findings of fact and conclusions of law; (2) the evidence is legally and factually insufficient to support the trial court's finding that family violence had occurred and was likely to occur in the future; (3) the protective order is "void ab initio" because she was "personally served contrary to an order specifically authorizing" alternative service; and (4) the trial court abused its discretion in denying her motion for continuance. We affirm.

## I. FINDINGS OF FACT & CONCLUSIONS OF LAW

In Hagner's first issue, she complains that the trial court erred by not signing findings of fact and conclusions of law after she requested such and filed a notice of past due findings and conclusions. Hagner further contends that the trial's court error was harmful because she has been "offered no means, without the requested findings and conclusions, to determine which ground, and acts or conduct supporting it, were proved to the trial court by preponderance of the evidence."

The protective order in this case provides:

> The Court finds that family violence has occurred and that family violence is likely to occur in the future. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Applicant and are necessary for the prevention of family violence. Respondent has continuously called, harassed, and threatened the Applicant, assaulted the Applicant, and threatened future harassing and threatening acts.

> This order shall continue in full force and effect until February 3, 2025.[1]

The protective order at issue in *Anjum v. Shams-Ul-Qamar*, No. 04-21-00586-CV, 2023 WL 6285331, at *2 (Tex. App.—San Antonio Sep. 27, 2023, no pet.) (mem. op.), included findings that "family violence has occurred," "family violence is likely to occur in the future," "Respondent, Hamzah Anjum, has committed family violence," and "Respondent caused serious bodily injury to the Applicant."

---

[1] We have declined to dismiss as moot expired domestic violence protective orders. *See James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.) ("Having already recognized that 'valuable rights are at stake,' we decline to declare this case moot and deprive appellant of his chance for redress.").

The appellant in *Anjum* similarly complained about "the trial court's failure to issue findings and conclusions." *Id*. at \*1. We held that "[b]y including the findings mandated by sections 85.001 and 85.025(a-1), it was not necessary for the trial court to make additional findings[,]" and we overruled the appellant's complaint. *Id*. at \*2. The order in this case includes the finding mandated by section 85.001 of the Texas Family Code.[2]

Following *Anjum*, we overrule Hagner's first issue.

## II. SUFFICIENCY OF THE EVIDENCE

In Hagner's second issue, she challenges the legal and factual sufficiency of the evidence supporting the trial court's finding that "family violence" had occurred and was likely to occur in the future.

### A.     Standard of Review

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823–24 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. We will sustain a legal sufficiency challenge only when the record shows: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id*. at 810. If more than a scintilla of evidence exists, it is legally sufficient. *Yang v. Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citing *Haggar*

---

[2] Section 85.025(a-1) applies to protective orders that exceed two years. *See* TEX. FAM. CODE ANN. § 85.02(a-1) ("The court may render a protective order sufficient to protect the applicant and members of the applicant's family or household that is effective for a period that *exceeds two years* if the court finds that the person who is the subject of the protective order . . .") (emphasis added).

*Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005)). More than a scintilla of evidence exists when the evidence supporting the finding rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

To review a factual-sufficiency challenge, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged findings. *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.). We will overturn a finding only when the evidence is so weak or contrary to the overwhelming weight of the evidence the finding is clearly wrong and unjust. *Id*. (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). The factfinder is the sole judge of the weight and credibility of the witnesses' testimony; we may not substitute our judgment for the trial court's judgment simply because we might reach a different conclusion. *City of Keller*, 168 S.W.3d at 819, 822; *Boyd*, 425 S.W.3d at 429.

**B.      Applicable Law**

Under the Texas Family Code, a trial court shall render a protective order if, at the close of a hearing on the application, the court finds family violence has occurred and is likely to occur in the future. TEX. FAM. CODE ANN. §§ 81.001, 85.001. "Family violence" means an act by a member of a family or household against another member of the family or household intended to result in physical harm, bodily injury, assault, or sexual assault or is a threat reasonably placing the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but does not include defensive measures to protect oneself. *Id*. at § 71.004(1). Evidence of a single act of family violence can support a finding of future family violence. *Vinzant v. Helduser*, No. 01-21-00633-CV, 2022 WL 3588756, at *7 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.); *Boyd*, 425 S.W.3d at 432 ("The statutory language . . . does not require that a likelihood

finding be based on more than one act of family violence."). Additionally, evidence that a person has engaged in a pattern of past threats or violent conduct will also support a finding that family violence is likely to occur in the future. *In re Epperson*, 213 S.W.3d 541, 543–44 (Tex. App.—Texarkana 2007, no pet.).

**C.      Relevant Evidence**

At the hearing on Valdez's application for a protective order, the trial court considered the testimony of Hagner, Valdez, and Valdez's sister, Desiree Silva.  Hagner and Valdez acknowledged that their romantic relationship, which spanned the second half of 2022, was tumultuous.  They recounted Valdez being arrested for a domestic disturbance that occurred on November 18, 2022, two disturbances in January 2023, and a romantic interlude approximately a week before the February 2, 2022 hearing on Valdez's application.

**1.      November 18, 2022 Disturbance**

Valdez recalled that, on November 18, 2022, he was driving Hagner in his vehicle and the couple got into an argument over one of Valdez's ex-girlfriends.  Valdez suggested that he drop Hagner off at her home, where he frequently stayed despite maintaining his own apartment.  As Valdez was driving, he received a telemarketing phone call, and Hagner tried hanging up the call from the vehicle's console, but he told her not to.  Hagner then asked Valdez to pull over.  As Hagner exited Valdez's pickup onto the side of the road, she grabbed Valdez's phone.  Valdez followed Hagner, and she "tossed" Valdez's phone.  Valdez then noticed Hagner going toward his pickup, and he believed that Hagner was going to take his pickup.  Valdez tried running toward his pickup, and in trying to catch up, he fell and broke his knee.  Hagner offered to drive Valdez to the emergency room, but Valdez insisted on first picking up his emotional support dog, Buddy, from Hagner's home.  After Valdez retrieved Buddy, he limped back to his pickup, thought he

could drive himself to the emergency room with his other leg, and told Hagner that he wanted to break up with her. Hagner then kicked Valdez, took his car keys, and ran into her house. Valdez attempted to gain entry by opening the garage door. He admitted that the garage door came off its hinges because he may have used an excessive amount of force. Valdez was arrested as a result of the incident and bailed himself out of jail. Hagner generally testified that Valdez's aggression during this incident was unprovoked.

### 2. January 11, 2023 Disturbance

Valdez recalled that, on January 11, 2023, Hagner showed up at his apartment and argued with him. A neighbor called the police, and Valdez was arrested for violating a no-contact bond condition from the November 18, 2022 disturbance.

Silva's recollection of the January 11, 2023 incident began when Valdez called her while Hagner was in his apartment and kept telling him to leave the apartment. Silva noted that, according to a bond condition, Valdez could not leave his apartment. Silva rushed to Valdez's apartment, and when she arrived, Valdez had barricaded himself inside the apartment manager's office to get away from Hagner. Silva witnessed Hagner "trying to get around the apartment manager" to get to Valdez.

### 3. January 13, 2023 Disturbance

Valdez testified that, on January 13, 2023, Hagner went to Valdez's apartment a second time. Valdez went to Silva's apartment, which was five doors down on the same floor as Valdez's apartment. While in Silva's apartment, Hagner kicked at her door and tried to gain entry. Valdez recorded the incident, and the trial court admitted the video into evidence. As the video played, Valdez described the sounds in the video as Hagner kicking and punching the door. At another point in the video, Valdez noted that Hagner broke the "little door knocker thing" and hit the door

so hard that the peephole "flew out on the inside." As the incident was unfolding, Valdez felt "helpless." He did not believe that he could call the police because every time he had called the police, he was the one who got arrested.

Silva testified that Hagner:

Kicked the door, hit the door, was screaming through the door. She did end up breaking the door frame. She also broke the door knocker that's on there, which then caused the peephole to fall in there. So she was looking in there screaming at me because I told him he needed to go away and call the police.

### 4.    January 24, 2023 Romantic Visit

Hagner testified, and Valdez did not dispute, that the couple rented an Airbnb the night of January 24, 2023, and that the couple was intimate during that visit. Valdez explained that the "relationship is toxic. It doesn't mean we're not intimate."

### 5.    Valdez and Silva's Concerns

Valdez testified that Hagner has threatened to kill him on three occasions, hire a third-party to kill him, and use the legal knowledge that she had learned as a law student to ruin his career. Valdez further testified that "I'm afraid for my life. I'm afraid for my career. I'm afraid for my sister. I don't — it is because I don't know at this point what [Hagner] is capable of." Valdez was concerned that, without a protective order, he has an inadequate legal remedy for his situation with Hagner because, during their past altercations, he has called the police, and he was the one who got arrested.

Silva recounted that she was physically afraid for her own safety during both of the incidents that she described, and she continues to be afraid. Silva elaborated that "when I walk out of — to go to work in the morning or when I get home, I'm constantly like looking everywhere." Silva explained that Valdez keeps going back to Hagner to "keep her at bay. . . . [because] once she can get her way, she's fine, or she'll be fine for a period. But once you neglect

her or don't talk to her is when she flips her switch." In Silva's opinion, Valdez is afraid of Hagner. He, according to Silva, "doesn't sleep at home. He's afraid of her that much. He will not sleep in his own home."

### 6.      Analysis

Hagner argues that "[e]vidence at trial failed to sufficiently prove an intentional act by [her] that resulted or was intended by [her] to result in bodily harm or injury, and failed to prove a threat made that would reasonably cause [Valdez] to fear harm." Hagner further argues that the record shows "no threats of violence made by [her] that would cause [Valdez] to feel fear of harm because it does not prove a threat at all" and "no evidence sufficient to conclude [Valdez] reasonably feared [Hagner.]"

The testimony points to at least three instances where Hagner either committed an act that was "intended to result in physical harm [or] bodily injury" or made a threat that reasonably placed Valdez "in fear of imminent physical harm [or] bodily injury[.]" TEX. FAM. CODE ANN. § 71.004(1). First, Hagner kicked Valdez during the November 18, 2022 disturbance, even if it was Valdez who was arrested. Second, Valdez and Silva testified that Hagner kicked, punched, and damaged Silva's front door as the two were in Silva's apartment. Third, Valdez testified that Hagner has threatened to kill him on three occasions and hire a third-party to kill him.

After viewing the evidence in the light most favorable to the trial court's finding and indulging every reasonable inference that would support it, we conclude that there is more than a scintilla of evidence supporting the trial court's finding that "family violence has occurred and that family violence is likely to occur in the future." *See Maples v. Maples*, 601 S.W.3d 23, 28 (Tex. App.—Tyler 2020, no pet.) ("[T]he statutory language does not require that a likelihood finding be based on more than one act of family violence."). We further conclude that the trial court's

family violence finding is not so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Boyd*, 425 S.W.3d at 429. Therefore, the evidence is factually sufficient to support the trial court's family violence finding.

We overrule Hagner's second issue.

### III. PERSONAL SERVICE

In Hagner's third issue, she complains that the trial court erred because it considered Valdez's application after she was personally served with citation rather than alternatively served as provided in an order authorizing alternative service. She references *Garrels v. Wales Transportation, Inc.*, 706 S.W.2d 757, 758 (Tex. App.—Dallas 1986, no writ), for its holding that "[f]ailure to affirmatively show strict compliance with the rules of civil procedure relating to the issuance, service, and return of citation will render the attempted service of process invalid and of no effect." Hagner's reliance is misplaced. In *Garrels*, the appellant challenged a default judgment. *Id*. at 759. The protective order at issue in this case was signed after a two-day evidentiary hearing, which Hagner, who was represented by trial counsel, participated in. Moreover, the record contains a return of service by a process server indicating that Hager was served "in person, having first endorsed the date of delivery on same." Texas Rule of Civil Procedure 119 provides in relevant part that "[t]he defendant may accept service of process . . . and such . . . acceptance shall have the same force and effect as if the citation had been issued and served as provided by law." TEX. R. CIV. P. 119. Hagner's briefing fails to appreciate Rule 119.

We overrule Hagner's third issue.

### IV. CONTINUANCE

Liberally construing Hagner's brief, in what we construe as her fourth issue, she complains that the trial court abused its discretion in denying her motion for continuance. On Saturday,

January 28, 2023, Hagner was personally served with citation notifying her that a hearing on Valdez's application was set for 9:00 a.m. on Monday, January 30, 2023. On January 30, 2023, Hagner filed a pro se motion for continuance that acknowledged her personal service but argued that a January 30, 2023 hearing deprived her of the three-days' notice provided in Texas Rule of Civil Procedure 21(b). *See* TEX. R. CIV. P. 21(b) ("An application to the court for an order and notice of any court proceeding, as defined in Rule 21d(a), not presented during a court proceeding, must be served upon all other parties not less than three days before the time specified for the court proceeding, unless otherwise provided by these rules or shortened by the court."). The hearing on Valdez's application did not begin until Thursday, February 2, 2023. Accordingly, because the record shows Hagner received a continuance, the trial court did not abuse its discretion in denying Hagner's motion for continuance on the ground articulated. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) ("When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis.").

We overrule Hagner's fourth issue.

### V. CONCLUSION

We affirm the trial court's order granting Valdez a protective order.

Rebeca C. Martinez, Chief Justice