IN THE COURT OF APPEALS
TWELFTH COURT OF APPEALS DISTRICT
TYLER, TEXAS

| | | |
|---|---|---|
| *CARL ROBERT MAPLES,* *APPELLANT* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW* |
| *CATHRYN MAPLES,* *APPELLEE* | *§* | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Carl Robert Maples appeals the trial court's issuance of a five-year protective order against him. On appeal, he contests the legal and factual sufficiency of the evidence to support the protective order, and the legal and factual sufficiency of the evidence to support a protective order for more than two years. We affirm.

### BACKGROUND

On February 6, 2019, Cathryn Maples filed an application for a protective order against Carl in Anderson County, Texas, and the trial court issued a temporary ex parte protective order that same day. A protective order hearing was held on March 18, 2019, at which Cathryn testified that she and Carl were married seven years and separated on December 1, 2018, when she moved out of the marital home with their children, a six year old son, a three year old daughter, and a one year old son, referred to as "the baby." On February 5, 2019, Cathryn received a text message from Carl at 12:15 a.m., telling her that he was coming to her house to get eggs. She did not see the text until almost 2:00 am. when she was awakened by the baby crying and arose to feed him. When Cathryn saw the text, she replied "[A]re you serious?" A few minutes later, she heard Carl's truck drive up and then heard him banging on the back door, and loudly yelling her name. Carl

was trying to open the door, but could not because that door was latched on the inside. Cathryn let Carl in, gave him some eggs, and he left.

After Cathryn finished nursing the baby, she checked the house and discovered both garage doors were open. She closed the garage doors, locked the back door, and went to her daughter's room to sleep. A few minutes later, Carl resumed banging on the back door while screaming and yelling which awoke the children. Carl was able to open the door and when Cathryn met him as he entered the house, he pushed her onto the couch, and he hit her on the face with his open hand. Carl continued striking Cathryn on her arms and retrieved his handgun from his waist. Believing that he was going to shoot her, Cathryn pleaded with him not to shoot her. Carl attempted to give Cathryn the gun and told her, "[H]ere, just kill me, shoot me to kill me." She refused to take the gun, so he threw it across the living room floor. He also told her that if he survived the night, he would get back at her.

At that point, Carl undressed down to his underwear. Cathryn went to her daughter's room to get her cellular telephone to call 911. However, she heard Carl walking towards her daughter's room so she turned the cellular telephone recorder on and put it in her pocket. Carl walked in the room, grabbed her, took her back to the living room, sat her down on the couch, and continued hitting and kicking her.

In the cellular telephone recording introduced into evidence at the hearing, Carl can be heard yelling and screaming at Cathryn, using expletives. When told that he was scaring the children, Carl replied, "[f]*** my kids," "kids my ass." He also told her he should beat her "[G]oddam ass," and that she was "full of shit." Cathryn could be heard screaming and crying. When she retrieved the cellular telephone from her pocket to call 911, Carl saw the telephone, told her to hang up, grabbed the telephone, and threw it across the living room. Carl then picked up his handgun off of the floor, sat on the couch, and fired the handgun towards the back door. He fired two or three additional rounds while cursing and waiving the gun around.

Then, Carl threw the handgun across the living room floor, punched a hole in the wall close to the baby's room, and entered the baby's room. When he laid down on the baby's bed, the baby left the bed and Cathryn picked him up. Carl then went to the six year old boy's room and laid down with him. Cathryn watched him for a few seconds and returned to the living room to find her cellular telephone. When she found it, she went to her daughter's bedroom, locked the door, and called 911. While Cathryn was talking to the 911 operator, Carl knocked on the bedroom

door. She put her cellular telephone under the pillow and unlocked the door. Carl entered the room, pushed her down to the bed, and pressed his finger into her side, underneath her arm, "really hard," hurting her. He then got up, began cursing, and went to the living room. At that point, she believed law enforcement arrived.

Cathryn described the children as being hysterical from Carl's actions. She testified that she suffered bruising on her head, arms, legs, and under her arms. She believed that she needed a protective order against Carl because she was afraid that he will act the same way again. Cathryn also testified to other previous incidents where Carl got mad and told her to get her "ass" out of the house. She stated that Carl demanded she leave four or five times and that, once, she left the house for two or three weeks. When Cathryn was nine months pregnant with her third child, she testified that Carl climbed on top of her, put his hands around her neck, and pushed her into the bed, shaking her. Carl was also verbally aggressive towards all the children. Moreover, Carl would leave loaded guns out where the children had access to them. In one instance, Carl left a handgun inside the couch which was found by the six year old son when he arrived home from school.

Robert Frakes, an investigator with the Anderson County Sheriff's Office, testified that he was dispatched to the house in response to Cathryn's 911 call. When confronted by Officer Frakes, Carl was belligerent and uncooperative, making it difficult to handcuff him until a second officer arrived to help. During an investigation of the incident, Officer Frakes discovered an empty shell casing near the open back door and an unspent cartridge near a wall in the living room.

On April 5, 2019, the trial court signed a protective order, finding that Carl and Cathryn are spouses and thus "intimate partners," that Carl committed family violence against Cathryn or the children and is likely to commit family violence in the future, and that the protective order should be effective for a term of five years until April 5, 2024. This appeal followed.

**PROTECTIVE ORDER**

In his first two issues, Carl argues that the evidence is legally and factually insufficient to support the protective order against him.

**Standard of Review**

A legal sufficiency challenge may only be sustained when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence

3

from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In determining whether there is legally sufficient evidence to support the finding, we must consider evidence favorable to the finding if a reasonable fact finder could, and disregard evidence contrary to the finding unless a reasonable fact finder could not. *Id.* at 827. Evidence is legally sufficient if it would enable fair-minded people to reach the finding or verdict under review. *Id.*

In reviewing a finding for factual sufficiency, we weigh all of the evidence in the record and set aside the challenged finding only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The trier of fact is the sole judge of the weight and credibility of the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

**Applicable Law**

At the close of a hearing on an application for a protective order, the court determines whether (1) family violence has occurred, and (2) family violence is likely to occur in the future. TEX. FAM. CODE ANN. § 85.001(a) (West 2019). If the court finds that family violence occurred and is likely to occur in the future, the court shall render a protective order applying only to a person found to have committed family violence. *Id.* § 85.001(b) (West 2019); *see also id.* § 81.001 (West 2019) (stating that a "court shall render a protective order as provided by Section 85.001(b) if the court finds that family violence has occurred and is likely to occur in the future.). "Family violence" means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. *Id.* § 71.004(1) (West 2019). "Given the remedial nature of [the Family Code's protective order provisions], courts should broadly construe its provisions so as to effectuate its humanitarian and preventative purposes." *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

4

**Analysis**

Here, Carl does not challenge the trial court's finding that family violence occurred on February 5, 2019, but he argues that the evidence is legally and factually insufficient to support a finding that family violence is likely to occur in the future. *See* TEX. FAM. CODE ANN. § 85.001(a). Carl contends that the record was completely absent of any evidence that he had a pattern of committing family violence in the past and that his alleged conduct on February 5, 2019, was an isolated incident. However, the statutory language does not require that a likelihood finding be based on more than one act of family violence. *See id.* §§ 81.001, 85.001(a); *see also **In re Lee***, 411 S.W.3d 445, 451 (Tex. 2013 (statute's plain language is "surest guide" to legislative intent). On the contrary, courts have recognized that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." ***Boyd***, 425 S.W.3d at 432 (quoting ***In re Epperson***, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.)). Under this principle, an act of family violence during one incident would permit a finding that the actor was likely to engage in future family violence. ***Id.***; *see **Carson v. Carson***, No. 07-16-00311-CV, 2017 WL 4341456, at *3 (Tex. App.—Amarillo Sept. 29, 2017, no pet.) (mem. op.); ***Collier v. State***, No. 12-13-00142-CV, 2013 WL 4769267, at *3 (Tex. App.—Tyler Sept. 4, 2013, no pet.) (mem. op.). Although in some cases there is a pattern of family violence, such as in both ***Teel v. Shifflett***, 309 S.W.3d 597 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), and ***Clements v. Haskovec***, 251 S.W.3d 79 (Tex. App.—Corpus Christi 2008, no pet.), these cases have not held that such a pattern of family violence is a necessary prerequisite to a likelihood finding. ***Boyd***, 425 S.W.3d at 432.

Further, in parental-termination and child-custody cases, "evidence that a parent has engaged in abusive or neglectful conduct in the past permits an inference that the parent will continue this behavior in the future." ***Teel***, 309 S.W.3d at 604 (quoting ***In re T.L.S. and R.L.P.***, 170 S.W.3d 164, 166 (Tex. App.—Waco 2005, no pet.)). This principle also applies in cases involving protective orders against family violence. ***Id.***; ***Banargent v. Brent***, No. 14–05–00574–CV, 2006 WL 462268, at *1–2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, no pet.) (mem. op.).

Carl committed family violence against Cathryn when he struck her face and arms, kicked her with his feet, and discharged a firearm during the assault. *See* TEX. FAM. CODE ANN. § 71.004(1). As previously stated, "past violent conduct can be competent evidence which is

legally and factually sufficient to sustain the award of a protective order." ***In re Epperson***, 213 S.W.3d at 544. And again, the family code does not require that a likelihood of future violence be based on more than one act of past violence. ***Carson***, 2017 WL 4341456, at *3; ***Collier***, 2013 WL 4769267, at *3; *see* ***Boyd***, 425 S.W.3d at 432. Accordingly, Carl's commission of an act of family violence on February 5, 2019, permits a finding that he was likely to engage in future family violence. *See* ***Boyd***, 425 S.W.3d at 432; *see also* ***Martin v. Martin***, 545 S.W.3d 162, 168 (Tex. App.—El Paso 2017, no pet.) (commission of act of family violence on March 21 would permit finding that appellant was likely to engage in future family violence; applicant filed for protective order on March 22). A reasonable fact finder could conclude that history will repeat itself. *See* ***Boyd***, 425 S.W.3d at 432. On this record, Cathryn's testimony presents more than a scintilla of evidence that family violence is likely to occur in the future. *See* ***City of Keller***, 168 S.W.3d at 810. Thus, we conclude that the evidence is legally sufficient to support a finding that Carl is likely to commit family violence in the future. *See* TEX. FAM. CODE ANN. § 85.001(a).

Regarding the factual sufficiency of a likelihood finding, Carl argues that Cathryn testified that he never threatened her life or the lives of the children in the past, that she never felt isolated or intimidated by Carl, and that Carl never tried to cut her off from the children or engaged in hyper-possessive activities. However, Cathryn testified that on the night of the incident, Carl told her that if he survived the night, he would get back at her. He also said, in reply to her plea that he was scaring the children, to "[f]*** the kids." He further told her to get her "ass" out of "here," presumably the house, which the evidence showed he had told her on previous occasions.

Further, the record demonstrates that Carl committed other acts of family violence. He pushed and shook Cathryn while she was nine months pregnant, was verbally abusive to the children, and left loaded guns where the children had access to them. Considering Cathryn's testimony and the trial court's role in weighing the credibility of the witnesses, the trial court could reasonably conclude that Carl was likely to commit another act of family violence. *See* ***Boyd***, 425 S.W.3d at 433. Accordingly, the family violence likelihood finding is not so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See* ***Ortiz***, 917 S.W.2d at 772. Thus, we conclude that the evidence is factually sufficient to support a finding that Carl is likely to commit family violence in the future. *See* TEX. FAM. CODE ANN. § 85.001(a). We overrule Carl's first and second issues.

In his third issue, Carl contends that the evidence is legally and factually insufficient to support a protective order for a period that exceeds two years.

**Applicable Law**

Section 85.025(a-1) states that the court may render a protective order sufficient to protect the applicant and members of the applicant's family or household that is effective for a period that exceeds two years if the court finds that the person who is the subject of the protective order:

(1) committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense;

(2) caused serious bodily injury to the applicant or a member of the applicant's family or household; or

(3) was the subject of two or more previous protective orders rendered:

    (A) to protect the person on whose behalf the current protective order is sought; and

    (B) after a finding by the court that the subject of the protective order:

        (i) has committed family violence; and

        (ii) is likely to commit family violence in the future.

TEX. FAM. CODE ANN. § 85.025(a-1) (West Supp. 2019).

A person commits assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. TEX. PENAL CODE ANN. § 22.01(a) (West Supp. 2019). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(8) (West Supp. 2019). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). Evidence of a cut or bruise is sufficient to show bodily injury. *Bin Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see Shah v. State*, 403 S.W.3d 29, 34–35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (sufficient evidence of bodily injury because the court could reasonably infer that a "lesion on the bridge of [the complainant's] nose would cause physical pain"); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.) (noting that the "existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain"); *Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. denied) (sufficient

evidence although the complainant did not testify about physical pain because there was a reasonable inference that "bruises and muscle strain caused him 'physical pain'").

A person commits aggravated assault if the person commits assault as defined in Section 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2019). An offense under Section 22.02 is a felony of the second degree. *Id*. § 22.02(b) (West 2019). "Deadly weapon" means a firearm; a handgun or firearm is a deadly weapon per se. *Id.* § 1.07(17) (West Supp. 2019); *Garner v. State*, 864 S.W.2d 92, 103 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (citing *Ex parte Carrasco*, 750 S.W.2d 222, 225 (Tex. Crim. App. 1988); *Ex parte Campbell*, 716 S.W.2d 523, 527 (Tex. Crim. App. 1986)).

**Analysis**

At the hearing, Cathryn testified that Carl hit her on the face and head with his open hand, hit her arms, and kicked her with his bare feet. He also pressed his finger into her side, "really hard," hurting her. Photographs admitted into evidence show Cathryn sustained bruises from Carl hitting her. From this evidence, the trial court could have reasonably determined that Carl committed assault against Cathryn. *See* TEX. PENAL CODE ANN. §§ 1.07(8), 22.01(a). When Carl first entered the house and began striking Cathryn, he pulled out a handgun and began waiving it around before throwing it across the room. Later, Carl picked up the handgun and discharged it two or three times. Officer Frakes discovered an empty shell casing near the back door. From this evidence, the trial court could have determined that Carl committed aggravated assault against Cathryn by using a deadly weapon during the commission of the assault, a second degree felony. *See id.* §§ 1.07(17), 22.02(a)(2), 22.02(b). Thus, there is more than a scintilla of evidence that Carl committed an act constituting a felony offense involving family violence against the applicant, Cathryn. *See City of Keller*, 168 S.W.3d at 810. We conclude that the evidence is legally sufficient to support the protective order for a period that exceeds two years. *See* TEX. FAM. CODE ANN. § 85.025(a-1).

Nevertheless, Carl argues that the trial court's ability to award a protective order for more than two years was factually insufficient because the evidence did not show that Cathryn or the children suffered serious bodily injury or that Carl had been the subject of two or more protective orders in the past, citing subsections (2) and (3) of Section 85.025(a-1) of the Texas Family Code. However, as noted above, the first subsection of 85.025(a-1) states that the court may render a

8

protective order that is effective for a period that exceeds two years if the court finds that the person who is the subject of the protective order committed an act constituting a felony offense involving family violence against the applicant, regardless of whether the person has been charged with or convicted of the offense. *See id.* § 85.025(a-1)(1). Carl does not mention subsection (1) and we need not evaluate whether the evidence supports a violation of subsections (2) or (3) having found the evidence supports a violation of subsection (1).

From the evidence presented, the trial court could reasonably determine that Carl committed the offense of aggravated assault against Cathryn, a second degree felony involving family violence. Thus, the trial court's protective order for a period that exceeds two years is not so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *See Ortiz*, 917 S.W.2d at 772. We conclude that the evidence is factually sufficient to support the trial court's protective order for a period that exceeds two years. *See* TEX. FAM. CODE ANN. § 85.025(a-1). Accordingly, we overrule Carl's third issue.[1]

## DISPOSITION

Having overruled Carl's first, second, and third issues, we ***affirm*** the judgment of the trial court.

**GREG NEELEY**
Justice

Opinion delivered January 22, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[1] Section 85.001(d) provides that if a court renders a protective order for a period of more than two years, the court must include in the order a finding described by Section 85.025(a-1). *See* TEX. FAM. CODE ANN. § 85.001(d) (West 2019). On its face, the protective order in this case did not contain any of the required findings of that section of the Texas Family Code to support a term of over two years. In his brief, Carl did not complain that the trial court's protective order failed to contain such a finding pursuant to Section 85.025(a-1). However, at oral argument, Carl raised, for the first time, that the protective order was defective because it did not contain such a finding, specifically, subsection (1) of Section 85.025(a-1). An issue may not be raised for the first time at oral argument unless the issue has been first presented in the party's written brief. *French v. Gill*, 206 S.W.3d 737, 743 (Tex. App.—Texarkana 2006, pet. denied); *In re W.J.H.*, 111 S.W.3d 707, 711 (Tex. App.—Fort Worth 2003, pet. denied) (issue may not be raised for the first time at oral argument). An appellate court cannot reverse a trial court's judgment absent properly assigned error. *Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (appellate court cannot consider unassigned error). Because Carl did not raise the issue until oral argument that the protective order was defective for more than a two year term because it did not include a required finding under Section 85.025(a-1), we may not consider such unassigned error. Therefore, Carl waived this issue. He filed a postsubmission motion for leave and order for supplemental briefing, which we deny.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 22, 2020**

**NO. 12-19-00146-CV**

**CARL ROBERT MAPLES,**
Appellant
V.
**CATHRYN MAPLES,**
Appellee

---

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. CCL-19-16320)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **CARL ROBERT MAPLES,** for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*