**Opinion issued December 15, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00101-CV

————————————

**CHRISTINE LENORE STARY, Appellant**

**V.**

**BRADY NEAL ETHRIDGE, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-16834**

---

# O P I N I O N

Appellant Christine Lenore Stary appeals from the trial court's order granting a lifetime family-violence protective order prohibiting her from communicating with or going near her three minor children. In four issues, Stary argues that: (1) the trial

court violated her right to due process by granting a lifetime protective order based only on proof by a preponderance of the evidence rather than by the heightened standard of proof by clear and convincing evidence; (2) the trial court violated her right to due process by granting the protective order for a period exceeding two years on the basis of an unadjudicated felony charge without applying a heightened burden of proof; (3) the evidence is insufficient to support the trial court's findings that she committed family violence and is likely to commit family violence in the future; and (4) the trial court abused its discretion by excluding evidence of appellee Brady Neal Ethridge's domestic abuse of her and denying her request to make an offer of proof. We affirm.

## BACKGROUND

Stary and Ethridge divorced in May 2018. Pursuant to an agreed divorce decree, the parties share custody of their three children: C.M.E. ("Cindy"), who was fifteen years old the time of the hearing; O.P.E. ("Naomi"), who was twelve years old at the time; and G.B.E. ("George"), who was nine years old.[1] Ethridge has possession of the children on Mondays and Tuesdays, Stary has possession of them on Wednesdays and Thursdays, and the parties alternate possession on weekends and holidays. After the parties' divorce, Ethridge remarried.

---

[1] We refer to the children by pseudonyms to protect their identities and privacy.

In March 2020, Ethridge filed an application for a protective order, alleging that Stary had committed acts of family violence and abuse against each of the children.[2] The application requested that the trial court enter a temporary ex parte order and a final protective order prohibiting Stary from committing family violence against the children, communicating directly with them, or going anywhere near them. The application also requested that Stary "complete a battering intervention and prevention program or counseling" and pay support for the children. Ethridge requested that the application remain effective longer than two years because Stary's actions towards the children allegedly constituted a felony offense involving family violence.

Ethridge attached several exhibits to the application, including the parties' agreed final divorce decree and documents from a criminal proceeding pending against Stary for injury to a child. Ethridge also attached a magistrate's order for emergency protection entered in the criminal proceeding, which prohibited Stary from committing further acts of family violence or communicating with the family in a threatening or harassing manner, among other things. Ethridge also attached an order for pretrial supervision and bond conditions entered in the criminal proceeding, which prohibited Stary from having any contact with the children as a condition of

---

[2]     The application also requested protection for Ethridge, but Ethridge waived this request at the hearing on the protective order.

her release on bond. Evidence admitted at trial showed that this condition was later amended to allow Stary supervised visits with the children.

The trial court signed a temporary ex parte protective order prohibiting Stary from committing family violence, communicating with the children except through their attorney, and going near their residence, schools, childcare facilities, and any other place where they are known to be. The order also scheduled a hearing on Ethridge's application for a protective order.

At the hearing, the parties appeared and were represented by counsel. Ethridge testified about several specific incidents during which Stary had hit, scratched, and otherwise caused physical injury to the children on multiple occasions. One incident occurred in March 2020, shortly before the application was filed. While the children were staying with Stary, she "grabbed [George] by the back of the head and beat his face on the hardwood floor and carpet," causing bruises, scratches, and bleeding that required emergency hospital treatment. George was taken to the emergency room and treated for his injuries. Stary was arrested and indicted for the third-degree felony offense of injury to a child. *See* TEX. PENAL CODE § 22.04(a)(3), (f). The criminal proceeding was still pending at the time of the hearing.

Ethridge also testified that Stary had elbowed Cindy in the ribs, dragged her out of bed and across the floor by her hair, and kicked her out of the car during a road trip to Colorado and left her on the side of the road. She fractured Naomi's

4

wrist, chased her down the street with hedge clippers, and locked her—as well as George on separate occasions—on the front porch at night and made her sleep outside.

Ethridge acknowledged that he was not present during these incidents but had learned about them from his children. Over Stary's objections, the trial court allowed Ethridge to testify about what the children had told him happened during these incidents.

Ethridge also testified that it was not unusual to receive urgent telephone calls from the children while they were with Stary. He also testified that Stary had been reported to child protective services at least five times. The trial court admitted into evidence the parties' final divorce decree; Stary's felony indictment for injury to a child; an emergency protective order entered in the criminal proceeding; George's medical and ambulance records from the March 2020 incident; and photos of George's injuries from this incident.

After Ethridge testified, Ethridge's counsel reminded the court of his motion requesting that the court interview the children. The trial court granted the motion, and the hearing was continued. When the hearing resumed nearly a month later, the trial court stated that it had interviewed each of the children but did not reveal any details of the interviews. The trial court stated that the children's amicus attorney

5

was the only person present in chambers with the judge and the children during the interview.

As her first witness, Stary called the parent of a student whom Stary taught as a kindergarten teacher. The parent testified generally about Stary's character and reputation for being a firm but gentle, nonviolent disciplinarian.

Stary also testified.[3] She denied ever harming the children or committing family violence. She gave excuses for the children's injuries, such as the children fighting with each other or running carelessly through the house. Her counsel attempted to ask her questions about Ethridge physically abusing her, but the trial court sustained relevancy objections to the testimony and denied Stary's request to make an offer of proof. Stary had attempted to ask Ethridge similar questions on cross-examination, and the trial court had also sustained objections to those questions.

At the end of the hearing, the trial court orally granted the protective order. The trial court ordered Stary not to have any contact with the children, stating that the order would remain in effect "in permanent duration for [Stary's] lifetime"

---

[3]    Prior to Stary testifying, the trial court admonished her about her Fifth Amendment right not to incriminate herself in her ongoing criminal proceeding by testifying at the hearing. *See* U.S. CONST. amend. V. Stary acknowledged the admonishment, stated that she wanted to testify, and affirmatively waived her Fifth Amendment right against self-incrimination.

subject to the children filing a motion to modify the order. The trial court also ordered Ethridge to keep the children in counseling, and it stated that the counselor should "make the decision on when the children might be ready to start reunification, or kind of, building back the relationship with [Stary]."

The trial court subsequently entered a written, final protective order. The order included findings that Ethridge, Stary, and the three children are members of the same family; family violence has occurred and is likely to occur in the future; and that Stary's actions against at least one of the children would constitute a felony if charged. The order prohibited Stary from communicating with the children except through their attorney or counselor, engaging in harassing or annoying conduct toward the children, and going near their known location, residence, schools, and childcare facilities. Stary was ordered to submit to a psychological evaluation and complete a course on domestic violence and children. The order assessed Ethridge's attorney's fees against Stary and ordered each party to pay half of the attorney's fees for the children's amicus attorney. Based on the finding that Stary's actions specifically towards George would constitute a felony, the order stated that it "shall remain permanently in full force and effect until such time as this order may be vacated or modified."

Stary filed a request for findings of fact and conclusions of law. The record does not include a ruling on this request.

Stary also filed a combined motion for new trial and motion to modify, correct, or reform the judgment. She argued that Ethridge was the only witness to testify at the hearing, but he was not present for and had no personal knowledge of any of the incidents of family violence that he testified about. She further argued that his testimony was based solely on inadmissible hearsay. She challenged the legal and factual sufficiency of the evidence supporting the order. She argued that the trial court improperly excluded evidence about Ethridge's domestic violence. Finally, she argued that the indefinite protective order "is tantamount to a termination of parental rights of [Stary]." The trial court entered a written order denying the motion for new trial. This appeal followed.[4]

## Due Process

In her first two issues, Stary complains about the standard of proof that the trial court applied to the protective order proceeding. She argues that the trial court violated her right to due process by applying the preponderance-of-the-evidence standard generally applied in protective order proceedings. However, she argues that the protective order effectively terminates her parental rights because it prohibits her from contacting or seeing her children indefinitely, and therefore due process

---

[4]     Ethridge did not file an appellate brief.

requires applying the heightened standard of proof by clear and convincing evidence applicable to parental termination proceedings.

Stary's first two issues are similar. Her first issue argues that due process requires clear and convincing evidence to enter a protective order for life. Her second issue argues that the trial court did not afford her the constitutional protections afforded to criminal defendants in finding that her actions constituted a felony offense. Because Stary's arguments on these two issues are similar, we consider them together.

## A.      Standard of Review and Governing Law

Whether a party has been deprived of a constitutional right is an issue of law that we review de novo. *Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446 (Tex. App.—Austin 2011, pet. denied).

For due process purposes, a standard of proof serves to "instruct the fact finder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." *Addison v. Texas*, 441 U.S. 418, 423 (1979) (quoting *In re Winship*, 397 U.S. 358, 370 (1970)). "The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Id.*

Parents have a fundamental liberty interest in the care, custody, and control of their children. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (citing U.S.

9

CONST. amend. XIV, § 1, and TEX. CONST. art. I, § 19); *see Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) ("[T]he custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (emphasizing "the importance of the family," and recognizing rights to conceive and to raise one's children are "essential," "basic civil rights of man," and "(r)ights far more precious . . . than property rights"). In order to involuntarily terminate a parent's rights to her child, due process requires proof by clear and convincing evidence. *In re N.G.*, 577 S.W.3d at 235; *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *see* TEX. FAM. CODE § 161.001(b) (requiring proof by clear and convincing evidence to terminate parent-child relationship). "Due process compels this heightened standard because terminating the parent-child relationship imposes permanent, irrevocable consequences." *In re N.G.*, 577 S.W.3d at 235 (quoting *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007)).

Protective orders generally are not permanent but are effective for up to two years. TEX. FAM. CODE § 85.025(a). The trial court may, however, render a protective order effective for more than two years if it finds that the subject of the protective order "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family . . . , regardless of whether the person has been charged with or convicted of the offense." *Id.*

10

§ 85.025(a), (a-1)(1). If a court renders or orders a protective order to be in effect for longer than two years, the subject of the protective order has a right to later file a motion requesting that the trial review the order to determine whether a continuing need exists for the order. *Id.* § 85.025(b). The subject must wait one year after the order is entered to file the motion. *Id.* If the motion is unsuccessful, the subject may file one additional motion requesting review of the protective order a year after the prior order denying review was entered. *Id.* § 85.025(b-1).

**B.    Analysis**

As stated above, Stary complains that application of a preponderance-of-the-evidence standard violated her right to due process. She argues that a lifetime protective order is equivalent to a termination of her parental rights, and therefore that the trial court should have applied the clear and convincing evidence standard applicable to parental-termination cases. She argues that the lifetime protective order effectively terminates her parental rights because she cannot see or communicate with her children, learn about their school activities, or have any relationship with them. She also argues that the trial court found that her actions constituted a felony offense without affording her the constitutional protections due to criminal defendants.

The protective order included findings that Stary had committed family violence and would likely commit family violence in the future. It also found that

Stary's conduct against "at least one of the minor children" would be a felony if charged. Based on this finding, it granted a protective order "of permanent duration."[5] *See id.* § 85.025 (a-1)(1).

Stary first argues that a lifetime protective order effectively terminates her parental rights. We disagree. "[A]n order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." *Id.* § 161.206(b). The validity of the order may not be directly or collaterally attacked more than six months after it issues if the parent whose rights were terminated was personally served. *Id.* § 161.211(a). A parent whose rights were terminated may file a petition to reinstate her parental rights so long as certain conditions are met, including that the suit to terminate parental rights was filed by the Department of Family and Protective Services and the child has not been adopted and is not the subject of an adoption agreement. *Id.* § 161.302(b).

---

[5]    The protective order states that the permanent duration of the order is "subject to [Ethridge] or any of the [children] filing a motion to vacate or a motion to modify this protective order." The order also states that the counselor for each child "shall specifically consider whether and when the child is ready to begin reunification with [Stary]." Stary does not challenge any inconsistency in these provisions or any deprivation of her own ability to file a motion to vacate or to modify the protective order. We note that Stary has a statutory right to seek review of the protective order to determine whether a continuing need exists for it. *See* TEX. FAM. CODE § 85.025(b), (b-1).

12

A protective order protecting a child from a parent's family violence, on the other hand, is generally not permanent. *See id.* § 85.025(a) (stating that protective orders generally should not exceed two years). Nor does it divest the parent of all legal rights and duties with respect to each other, even if the duration of the order is indefinite. Rather, protective orders require a person found to have committed family violence to perform or to refrain from performing certain acts. *Id.* § 85.022. The Family Code includes a non-exhaustive list of actions that trial courts may prohibit a person found to have committed family violence from engaging in, including: (1) committing family violence; (2) communicating with the protected person except through the person's attorney or representative; (3) going near the protected person's residence, place of employment, child-care facility, or school; (4) engaging in conduct directed specifically toward a protected person that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person; (5) possessing a firearm; and (6) harming, threatening, or interfering with a protected person's pet or companion or assistance animal. *Id.* at § 85.022(b); *see Rodriguez v. Doe*, 614 S.W.3d 380, 385–86 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding that section 85.022(b) list is not exhaustive).

Importantly, unlike for termination of parental rights, the Family Code does not authorize a trial court to divest a parent of all legal rights and duties with respected to a protected child. *Compare* Tex. Fam. Code § 85.022(b) *with id.*

13

§ 161.206(b). Thus, the scope of the rights affected by a protective order, even for an indefinite time period, is more limited than the rights affected by a parental termination case.

Here, the protective order does not state that it terminates Stary's parental rights. Nor does it actually divest Stary and her children of all legal rights and duties with respect to each other. *See id.* § 161.206(b) (stating that parental termination order "divests the parent and the child of all legal rights and duties with respect to each other"). To the contrary, it only prohibits certain specific actions, including prohibiting Stary from committing family violence or taking other action intended to physically harm or injure the children; communicating with them except through their attorney or counselor; engaging in conduct reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass them; harming, threatening, or interfering with their pets; going near any location where they are known to be and their residence, child-care facilities, and schools; and possessing a firearm or ammunition. *See id.* § 85.022(b); *Rodriguez*, 614 S.W.3d at 385–86.

When read in conjunction with the parties' agreed final divorce decree, which the trial court admitted into evidence at the hearing, Stary retains many rights and duties regarding her children. For example, the divorce decree expressly grants Stary the rights to receive information and records about the children's health, education, and welfare; to confer with Ethridge when possible in making decisions about the

14

children's health, education, and welfare; and to consent to medical, dental, and surgical procedures and education decisions subject to Ethridge's agreement. It also grants her other rights, many of which do not conflict with the prohibitions in the protective order and therefore remain in effect. Thus, Stary retains some parental rights. Undoubtedly, the rights she retains pale in comparison to the rights she lost by the protective order. But the retention of some rights distinguishes the protective order in this case from an order in a parental termination case.

Another major distinguishing factor between a protective order and an order terminating parental rights is the ability of the parent subject to the order to later request the trial court to vacate or modify the order. In parental-termination cases, termination of rights "is complete, final, and irrevocable. It divests forever the parent and child of all legal rights, privileges, duties, and powers between each other except for the child's right to inherit." *In re G.M.*, 596 S.W.2d at 846; *see* TEX. FAM. CODE § 161.206(b) (stating with limited exceptions for post-termination contact, "an order terminating the parent child-relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent"). A former parent whose parental rights were involuntarily terminated may file a petition to reinstate her parental rights only in very limited circumstances, including when the termination suit was instituted by the Department of Family and Protective Services and the child has not been adopted

15

and is not subject to an adoption placement agreement. TEX. FAM. CODE § 161.302(a)(4), (b).

A parent subject to a protective order effective for longer than two years, on the other hand, may file a motion requesting that the trial court review the protective order to determine whether a continuing need exists for protection. *Id* § 85.025(b). There are conditions, however. The parent must wait one year after the trial court signs the protective order to seek review of it, and she must wait another year to seek review again if the trial court denies her first motion for review. *Id.* § 85.025(b), (b-1). The parent is also limited to two motions for review; if both are denied, the protective order remains in effect until its stated expiration date. *Id.* § 85.025(b-2).

Stary argues that because the protective order is effective indefinitely, she would forever lose her parental rights if she is unsuccessful after two attempts to persuade the trial court that no continuing need exists for the order. But, even a limited opportunity to seek review of a protective order renders it impermanent, unlike a parental termination which is "complete, final, and irrevocable." *See In re G.M.*, 596 S.W.2d at 846. We note that the protective order itself provides Stary with a path forward. It orders her to submit to a psychological evaluation and, if necessary, treatment, and it orders her to complete an online course for domestic violence and children. It also orders Ethridge to maintain counseling for the children, and for each child's counselor to "specifically consider whether and when the child

16

is ready to begin reunification with" Stary. As discussed in further detail below, the evidence at the hearing indicated that Stary committed multiple acts of physical violence causing serious physical injury to each of her three children, including fractured wrists, rib contusions, and body scratches, bruises, and bleeding. Stary has the opportunity to take advantage of these resources and learn to have a nonviolent parent-child relationship so thatshe can show the trial court in the future that no continuing need exists for the protective order.

Finally, Stary argues that the trial court violated her constitutional rights in finding that she committed a felony involving family violence. She argues that she was not afforded the constitutional protections due to criminal defendants or to parents facing parental termination. However, the protective order proceeding is a civil proceeding, not a criminal proceeding. To render a protective order effective for more than two years, the trial court must find that the subject of the order "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family . . . , regardless of whether the person has been charged with or convicted of the offense." TEX. FAM. CODE § 85.025(a-1)(1). Thus, the protective order proceeding did not adjudicate Stary's guilt for any criminal offense, but rather adjudicated whether Stary's actions constituted a felony offense as a condition of rendering a protective order effective for longer than two years. Stary was not entitled to an evidentiary standard of proof

beyond a reasonable doubt, as required in a criminal trial of a felony offense.[6] The finding that actions constituted a felony offense only allows the trial court to extend the protective order beyond two years.

Stary does not rely on any legal authority supporting the premise of her argument that a lifetime protective order amounts to a termination of parental rights. Our own research has not revealed any legal authority directly on point. We note, however, that a few opinions have rejected the application of a heightened burden of proof in family-violence, protective-order proceedings.

In *Turner v. Roberson*, the trial court entered a protective order against a father, prohibiting him "from making any type of contact with [his] child." No. 05-11-01272-CV, 2013 WL 2152636, at *3 (Tex. App.—Dallas May 17, 2013, no pet.) (mem. op.). Like Stary, the father argued on appeal that the order effectively terminated his parental rights and therefore required proof by clear and convincing evidence. *Id.* It is unclear from the opinion whether the protective order was effective for longer than two years. The Dallas Court of Appeals disagreed with the father, however, and concluded that the protective order did not terminate the father's

---

[6]    We note that, prior to Stary's testimony at the hearing, the trial court admonished her and her counsel that she had a right to remain silent in the protective order proceeding because of her ongoing criminal proceeding and that her testimony in the former could be used against her in the latter. Stary affirmatively acknowledged that she waived her Fifth Amendment right and wanted to testify.

rights. *Id.* at *4. The court reasoned that the protective order did not state that it terminated the father's rights as to his child, and section 85.022(b) of the Family Code permits the restrictions included in the order. *Id.* The same is true here.

Outside of the parent-child context, the Dallas Court of Appeals has concluded that an estranged boyfriend was not denied due process by the trial court's application of the standard of proof by a preponderance of the evidence at a protective order hearing. *Roper v. Jolliffe*, 493 S.W.3d 624, 638 (Tex. App.—Dallas 2015, pet. denied). The boyfriend contended that the proceeding was quasi-criminal and thus required proof by clear and convincing evidence. *Id.* The court concluded that the application of the lower standard of proof did not violate the boyfriend's due-process rights because the proceeding is civil in nature and the interests at stake in the case did "not equate to cases that require proof by clear and convincing evidence, such as termination of parental rights and involuntary mental health commitment. *Id.* We acknowledge that the interests at stake here between parent and child are more significant than those between estranged partners. Nevertheless, we are not persuaded that these interests require heightened standard of proof in protective-order proceedings.

The Fourteenth Court of Appeals has rejected a father's argument that due process requires an application of the heightened burden of proof by clear and convincing evidence in protective-order proceedings prohibiting him from

19

contacting his daughter for ten years. *Jovel v. Blanco*, No. 14-20-00638-CV, 2022 WL 220251, at \*3 (Tex. App.—Houston [14th Dist.] Jan. 25, 2022, no pet.) (mem. op.) (relying on *Roper*, holding that interests at stake in protective order proceeding against estranged boyfriend did not equate to those at stake in parental termination cases). However, the issue was not preserved for appellate review, so these statements are dicta. *See id.* The Fourteenth Court of Appeals has also concluded that a protective order against an ex-husband did not directly infringe on his parental rights as to minor children from a previous marriage, and therefore due process did not require a heightened burden of proof. *Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at \*5 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.). But, as in *Roper*, *Caballero* did not concern a protective order between parent and child.

Finally, this Court has stated that factual-sufficiency review of a protective order does not require proof by the clear-and-convincing-standard of evidence that applies to parental-termination cases. *Boyd v. Palmore*, 425 S.W.3d 425, 432 n.3 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Although none of these cases are directly on point, they reveal an overwhelming rejection of the argument that protective-order proceedings are the same as termination-of-parental-rights proceedings, thereby constitutionally requiring a heightened standard of proof.

We overrule Stary's first and second issues.

20

**Sufficiency of Evidence**

In her third issue, Stary challenges the sufficiency of the evidence supporting the trial court's finding that family violence had occurred and that it was likely to occur in the future.

## A.    Standard of Review

When the trial court acts as factfinder, we review its findings for legal and factual sufficiency. *Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.). In a legal sufficiency challenge by the party who did not bear the burden of proof at trial, we consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* If more than a mere scintilla of evidence exists, we will overrule the legal sufficiency challenge. *Id.* A scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to reach differing conclusions. *Id.*

In a factual sufficiency review, we examine the entire record and consider and weigh all the evidence, both in support of and contrary to the challenged finding. *Boyd*, 425 S.W.3d at 429. After considering and weighing all the evidence, we will set aside the order only if the evidence is so weak, or the finding is so against the

great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Id.* We cannot substitute our opinion for that of the trial court. *Id.*

When, as here, the trial court acts as factfinder, it is the sole judge of witness credibility and the weight to give witness testimony. *Townsend v. Vasquez*, 569 S.W.3d 796, 807–08 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The trial court may choose to believe one witness over another. *Id.* It may also resolve inconsistencies in witness testimony, regardless of whether such inconsistencies result from contradictory accounts of multiple witnesses or from internal contradictions in the testimony of a single witness. *Guimaraes v. Brann*, 562 S.W.3d 521, 549 (Tex. App.—Houston [1st Dist.] pet. denied).

## B. Governing Law

The Family Code authorizes an adult family member to file an application for a protective order to protect the applicant or any member of the applicant's family. TEX. FAM. CODE § 82.002(a). After a hearing, the trial court must render the protective order if it finds that family violence has occurred and is likely to occur in the future. *Id.* §§ 81.001, 85.001(a), (b); *see Boyd*, 425 S.W.3d at 429. The definition of "family violence" includes "an act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or sexual assault" *or* "that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does

22

not include defensive measures to protect oneself." TEX. FAM. CODE § 71.004(1); *see Boyd*, 425 S.W.3d at 429. "Family" is defined to include a parent and child. TEX. FAM. CODE § 71.003.

## C.     Analysis

Stary argues that the evidence is legally and factually insufficient to support the trial court's finding that family violence occurred and is likely to occur in the future. Stary argues that Ethridge's only evidence consisted of his testimony about Stary's actions towards the children during times he was not present, lacked personal knowledge, and relied entirely on hearsay. Stary argues that one of the children's medical records, which were admitted at the hearing, included hearsay. Stary also argues that Ethridge testified about other incidents of family violence towards the other children, but he presented no corroborating evidence of these incidents. Stary finally argues that the trial court erred by denying her character witness the opportunity to rebut Ethridge's allegations about her.

### 1.     Legal Sufficiency

As stated above, Ethridge testified at the hearing that Stary had hit, scratched, and injured the children on multiple occasions. *See* TEX. FAM. CODE § 71.004(1) (defining "family violence" to include an act by one family member intending to result in physical harm or bodily injury to another family member). The primary incident occurred in March 2020 while the children were staying with Stary for her

possession period. Over Stary's objection, Ethridge testified about what George had told him about the incident:

> [George] explain[ed] that he was severely beaten to where his face was slammed—[Stary] had grabbed him by the back of the head and beat his face on the hardwood floor and carpet. And when his nose started bleeding, you know, of course he turned his head a little bit to the right and she continued to beat on the—where the bruising from the cheeks and eyes. And then when that started hurting, he turned his head the other way and that's where the top of his ear got pinched between . . . the floor, while she had her hand in the back of his hair, slamming his head into the floor, the hardwood floors and carpet.

Ethridge testified that George was "crying and screaming, calling for help. Asking them [the other children] to call the police. Call 911." Naomi intervened, and took George into the bathroom, locked the door, and eventually bathed him before police arrived and he went to the hospital. Ethridge testified that George told him that Stary began banging on the door, accusing Naomi of molesting George in the bathroom. One of the children eventually called 911, and Stary was arrested and indicted for the third-degree-felony offense of injury to a child. *See* TEX. PENAL CODE § 22.04(a)(3), (f). The trial court admitted the criminal indictment against Stary into evidence.

When Ethridge finally saw George ten or twelve hours after the incident, he testified that George "was clearly, like excited, shaken up. You know, crying where he couldn't catch his breath." He testified that he personally observed multiple injuries on George, including "multiple scratches, bruises, direct scabs from blood.

24

Face, neck, arms, legs, you know everywhere skin was showing that clothing wasn't covering." Ethridge testified about several photographs depicting George's injuries, which the trial court admitted into evidence. He said that the injuries were visible for several days. The trial court also admitted into evidence records from the ambulance ride to the hospital and George's medical records. Ethridge agreed with his counsel that he observed all of the injuries documented in the medical reports.

The trial court also allowed Ethridge to testify about Naomi's statements, overruling Stary's hearsay objections.[7] According to Ethridge, Naomi told him that Stary "grabbed [George] by the back of the head and threw him on the floor and beat his head and drug him by the—his leg around the house. Flipped him over, landed on top of him and tried to perform an exorcism." Naomi told Ethridge that George was screaming and Stary "grabbed her hand and tried to clamp his mouth shut to keep him from screaming anymore." Ethridge said that Naomi told him she was finally able to take George into the bathroom and lock the door, and that Stary began banging on the door and accusing her of molesting George.

---

[7] The trial court admitted the statements under the hearsay exception for an excited utterance. *See* TEX. R. EVID. 803(2) (stating that rule against hearsay does not exclude excited utterance, defined as "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that caused it"). Stary does not challenge this ruling on appeal.

Ethridge testified that this was not the only incident. He said it was not unusual to receive urgent telephone calls from the children while they were staying with Stary, and it generally happened twice a month. He did not personally observe any of these incidents, as they occurred while the children stayed with Stary during her periods of possession, but he saw the children afterwards, observed their symptoms and injuries, and took them to the hospital for medical care in some instances. He also testified that Stary has been reported to child protective services at least five times, although he conceded that CPS had "ruled out" all of the reports.

Ethridge testified that he picked up Cindy from school in March 2019, when she was eleven years old. Cindy complained about pain in her ribs, telling Ethridge that Stary had elbowed her in the ribs. Ethridge took Cindy to the emergency room where doctors diagnosed her with a contusion. She was bruised, had to sleep sitting up in a chair, and had problems using the restroom due to the contusion. Her doctors reported the injuries to law enforcement officers.

Stary had also fractured Naomi's wrist when she was ten years old. Naomi told Ethridge that Stary pushed her over the side of the bed and she hurt her wrist catching her fall. In February 2020, Stary chased Naomi down the street with hedge clippers after getting into an argument. In May 2018, Stary pushed Naomi off a dresser she was sitting on, telling her not to sit on the furniture and to clean up. Ethridge testified that he had observed Stary verbally abuse Naomi by calling her

names. Stary had also dragged Cindy out of bed by her ponytail, dragged her across the floor, and shoved dirty socks in her mouth. She had also locked Naomi and George out of the house on separate occasions and made them sleep on the front porch.

Finally, Ethridge testified about a road trip that Stary took the children on to Colorado. During the drive, Stary became upset that Cindy was playing on her cell phone instead of reading a book. She began to argue with Cindy and eventually stopped the car on the side of the road and told Cindy to get out. Cindy did so, and Stary drove off. She returned after Cindy called police.

Although Stary stops short of challenging this testimony as inadmissible, she argues that Ethridge was not present during any of these incidents, lacked personal knowledge of them, and relied entirely on hearsay. Indeed, Stary objected almost exclusively on hearsay grounds during the hearing. However, the Family Code expressly states that, at a hearing on an application for a protective order, "a statement made by a child 12 years of age or younger that describes alleged family violence against the child is admissible as evidence." TEX. FAM. CODE § 84.006. Thus, even though Ethridge was not present during these incidents, his testimony about the children's statements to him were admissible.[8] Furthermore, Ethridge

---

[8] Of course, the statements are only admissible if the child was under twelve years old when the statement was made. *See* TEX. FAM. CODE § 84.006. On appeal, Stary

testified that he observed the injuries and took the children to seek medical care after some of the incidents. He said that George's injuries from the March 2020 incident were visible for several days. The trial court is the sole judge of Ethridge's credibility and demeanor. *See Townsend*, 569 S.W.3d at 807–08.

Stary also argues that George's medical records from the March 2020 incident contained inadmissible hearsay and did not support Ethridge's testimony.[9] Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 378 (Tex. 2019). Generally, hearsay is inadmissible. TEX. R. EVID. 802; *Hall*, 579 S.W.3d at 378. However, certain statements made for medical diagnosis or treatment that are hearsay are admissible. TEX. R. EVID. 803(4). Rule 803 authorizes the admission of a statement that "is made for—and is reasonably pertinent to—medical diagnosis or treatment" and "describes medical history, past or present symptoms or sensations, their inception, or their general cause." *Id.*

---

does not challenge any of the children's statements on the ground that the child was over twelve years of age when the statement was made.

[9] Stary does not challenge admission of the medical reports themselves, which were accompanied by a business records affidavit. *See* TEX. R. EVID. 803(6) (authorizing admission of records of regularly conducted activity); *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) ("Rule of Evidence 803(6) allows for admission of medical records so long as counsel provides testimony of a records custodian or an affidavit that complies with Rule 902(10).").

28

Stary does not identify which statements in the medical records she challenges as hearsay. *See* TEX. R. APP. P. 38.1(i) (requiring appellate briefs to contain clear and concise argument with appropriate citations to authorities and to record); *see Guimaraes*, 562 S.W.3d at 545 ("[A] brief that does not contain citations to appropriate authorities and to the record for a given issue waives that issue."). Nor does she provide any analysis of the various statements to show that they were not made for purposes of diagnosing or treating George's injuries. *See id.*; TEX. R. EVID. 803(4). Thus, she has waived review of this challenge.

In any event, our review of the medical records reveals that they include statements both by George and by hospital staff, including George's treating physician. We have already stated that George's statements are admissible under section 84.006 of the Family Code. *See* TEX. FAM. CODE § 84.006. And, the statements by hospital staff were made because George had been admitted to the emergency room following his injuries from Stary. Thus, the record before us indicates that these statements were made for, and are reasonably pertinent to, the medical diagnosis and treatment of George's injuries because they describe his medical history, symptoms of his injuries, and the inception and general cause of the injuries. *See* TEX. R. EVID. 803(4).

The medical records include the following statements. George presented with "Physical Assault" and he was "hit by mother[.]" The report included the following description of the incident:

> 9 year old previously healthy here after physical assault by mother. Reports that there was a conflict this afternoon that resulted in mom throwing him to the ground multiple times, during which he hit his forehead. He denies LOC, current dizziness, emesis. He also has multiple scratches over his arms, neck, and face that he reports occurred during this confrontation. He states he was dragged on the floor.
>
> He states this happens regularly—scratching and hitting by mom. He does not feel safe at mom's home. There is split custody between mom and dad's house. He reports feeling safe at dad's house.

George's physician included a written statement regarding injury to a child. According to the statement, George told the physician:

> Patient states his mother threw him to the ground and hit his forehead repeatedly against the ground, she also scratched him over his face, neck, arms, and chest.

The statement continued, George "has bruises over his belly and ankle, as well as small burst blood vessels in the skin around his right eye" and "multiple deep scratches over his face, neck, chest, arms, and legs." These same injuries were noted in the diagnosis portion of the medical report. Finally, the statement included a prognosis:

> Prognosis of the current injuries is that [George] is expected to make a full recovery. However, prognosis overall is poor if he is left in the environment in which the injuries occurred, due to high risk of further and more severe injuries.

The trial court also admitted ambulance records from George's trip to the emergency room, which Stary does not challenge on appeal. These records state that George's primary symptoms were pain and headache caused by "injury by bodily force/Assault." The records stated, "[Patient] std he got into an altercation w his mother and she grabbed him and slammed face into ground and clawed him. [Patient] has abrasion to r side of face and scratches on neck. [Patient] also std his nose was bleeding . . . ."

The trial court also admitted several photographs depicting injuries to George that Ethridge testified were caused by Stary. It also admitted the criminal indictment against Stary for two counts of the third-degree felony offense of injury to a child, specifically George. *See* TEX. PENAL CODE § 22.04(a)(3), (f). The court also admitted temporary emergency orders issued in the criminal proceeding that prohibited Stary from committing family violence. Contrary to Stary's arguments on appeal, this evidence of Stary's family violence towards George corroborates Ethridge's testimony about the March 2020 incident.

Stary correctly asserts that Ethridge presented no evidence corroborating his testimony about the other incidents of family violence. Nevertheless, the trial court was the sole judge of Ethridge's credibility and demeanor, and it could choose to believe his testimony over Stary's testimony denying that she physically harmed the children. *See Townsend*, 569 S.W.3d at 807–08; *Guimaraes*, 562 S.W.3d at 549. We

31

note that the trial court interviewed the children in chambers. The only people present for the interviews were the children, their attorney, and the judge. Although there is no record of the children's statements to the court, Ethridge specifically testified at the hearing that he wanted the trial court to ask the children about these various incidents. Presumably, the court was satisfied that the children's in-chambers statements supported Ethridge's testimony and the court's finding of family violence.

Finally, a finding that family violence is likely to occur in the future can be based on a single act of family violence. *See* TEX. FAM. CODE §§ 81.001, 85.001(a); *Maples v. Maples*, 601 S.W.3d 23, 28 (Tex. App.—Tyler 2020, no pet.); *Boyd*, 425 S.W.3d at 432. "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Boyd*, 425 S.W.3d at 432 (quoting *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.)). In this case, Ethridge testified about numerous incidents during which Stary physically harmed each of the children or threatened to place them in fear of imminent physical harm or bodily injury.

We conclude that this evidence is legally sufficient to support the protective order. Ethridge offered testimony and documentary evidence of multiple instances in which Stary had physically harmed or caused bodily injury to the children. *See* TEX. FAM. CODE § 71.004(1). This evidence constitutes at least a scintilla of evidence

showing that family violence occurred and is likely to occur in the future. Therefore, the evidence is legally sufficient to support this finding. *See Lei Yang*, 629 S.W.3d at 670.

### 2. Factual Sufficiency

The evidence contrary to the finding of family violence consisted solely of testimony by Stary and her character witness at the hearing. *See Boyd*, 425 S.W.3d at 429 (stating that appellate court reviewing factual sufficiency of finding considers evidence both in support of and contrary to the challenged finding). Stary denied having ever harmed the children, and she gave excuses for the children's injuries. Regarding the March 2020 incident against George, Stary testified that George was injured from fighting with the other children, not her. She said that George has a temper, which had caused him to damage her house and hurt his two sisters. She said that during the March 2020 incident, she had to use her body to "cage him" on the ground so that he could not hurt his sisters. She said he was injured from his one of his sister's kicking him, pulling him across the carpet by his legs, and fighting with him. She denied having accused Naomi of molesting George in the bathroom.

Stary also denied causing Cindy's fractured wrist, testifying that Cindy hurt herself when she was running through her house. She also denied injuring Cindy's ribs. She testified that Cindy was angry and kicking her because that she had taken away a cell phone. She admitted that she "moved [her] arms back a little bit" and

33

pushed her elbow back towards Naomi and hit her, but she denied trying to hurt her. She said that she barely touched Naomi, who did not cry or complain about the incident until she went to Ethridge's house.

Finally, regarding the Colorado road trip, Stary conceded that she stopped the car and told Cindy to get out because she would not comply with Stary's request to get off her phone and read a book. But, she denied actually intending for Cindy to get out of the car, and she said Cindy jumped out of the car when it stopped. She denied that she drove off. The trial court, acting as factfinder, was the sole judge of Stary's credibility and could choose to believe Ethridge over her. *See Townsend*, 569 S.W.3d at 807–08; *Guimaraes*, 562 S.W.3d at 549. This testimony does not render the evidence so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong or unjust. *See Boyd*, 425 S.W.3d at 429.

Stary also called a character witness who was a parent of a student of a child that Stary taught in kindergarten. She testified generally about Stary's character and reputation for being a firm but gentle, nonviolent disciplinarian. Stary argues that the trial court did not allow her witness to testify about Stary's character or her parenting of or relationship with her children, which she argues is relevant to the issuance of the protective order. However, our review of the reporter's record reveals that the trial court generally allowed the witness to testify about Stary's character. The trial court only sustained objections to questions about how Stary interacted

34

with her students, whether she had a reputation as an "appropriate disciplinarian and teacher," whether the witness's children had ever stayed at Stary's home, whether the witness knows Stary as a truthful person, and whether Ethridge attempted to prevent Stary from teaching. None of this evidence is relevant to whether Stary committed acts of family violence against her children. *See* TEX. FAM. CODE §§ 81.001, 85.001(a); *see also id.* § 71.004(1). The witness was able to testify about Stary's character for disciplining her own children as well as interactions between Stary and her children that the witness observed, which are relevant to the family violence issue.

We conclude that the testimony of Stary and her witness does not render the trial court's finding of family violence so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Boyd*, 425 S.W.3d at 429. The only evidence contrary to the finding consisted of this testimony, which the trial court was free to disbelieve in favor of believing Ethridge's testimony. *See Guimaraes*, 562 S.W.3d at 549.

We overrule Stary's third issue.

### Evidentiary Rulings

Finally, in her fourth issue, Stary argues that the trial court abused its discretion by excluding evidence of Ethridge's domestic violence against her and by denying her request to make an offer of proof on this evidence.

We review a trial court's evidentiary rulings for an abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *Loftin v. Loftin*, 630 S.W.3d 369, 373 (Tex. App.—El Paso 2021, no pet.); *In re A.M.*, 418 S.W.3d 830, 836 (Tex. App.—Dallas 2013, no pet.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules and principles. *Waldrip*, 380 S.W.3d at 132; *In re A.M.*, 418 S.W.3d at 836. We will uphold a trial court's evidentiary ruling if there is any legitimate basis for it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *In re A.M.*, 418 S.W.3d at 836.

During the hearing, Stary attempted to elicit testimony that Ethridge had a history of domestic abuse. The trial court sustained Ethridge's objections to the relevancy of the evidence. When Stary requested to make an offer of proof, the trial court refused her request because the evidence was irrelevant. On appeal, Stary argues that evidence of Ethridge's domestic abuse of her is relevant because "there is a cycle of domestic violence and it spoke to the children's state of mind and family history." She also argues, "If there was evidence that the children witnessed [Ethridge] abusing [Stary] on multiple occasions, that history would absolutely be relevant to the issues in this case." We disagree.

The issues in this case are whether family violence has occurred and is likely to occur in the future, and whether the acts of family violence constituted a felony

offense such that the protective order should be effective for more than two years. *See* TEX. FAM. CODE §§ 81.001, 85.025(a-1)(1). The only pleading on file was Ethridge's application for a protective order alleging that Stary had committed acts of family violence against the children, that family violence was likely to occur in the future, and that the acts constituted a felony offense involving family violence. There is no pleading alleging that Ethridge committed acts of family violence against Stary or anyone else. Thus, the only issues in this case involved Stary's actions towards the children that may constitute family violence, not Ethridge's actions.

Whether Ethridge physically abused Stary in front of the children does not have any tendency to make it more or less probable that Stary physically injured the children. *See* TEX. R. EVID. 401 (stating test for relevant evidence). Stary argues broadly that Ethridge's cycle of abuse is relevant to whether Stary physically abused the children, but she does not explain why it is relevant or support her argument with any legal authority. *See* TEX. R. APP. P. 38.1(i); *Guimaraes*, 562 S.W.3d at 538 ("Failure to cite to appropriate legal authority or to provide substantive analysis of the legal issues presented results in waiver of a complaint on appeal.").

Stary also argues that the trial court erred by refusing her request to make an offer of proof. An offer of proof is required to preserve error in a trial court's ruling excluding evidence unless the substance of the evidence was apparent from its context. TEX. R. EVID. 103(a). An offer of proof consists of the proponent of the

37

evidence informing the trial court of the substance of the excluded evidence. *Id.* An offer of proof allows the trial court to reconsider its ruling in light of the evidence in the offer, and it allows a reviewing court to assess whether exclusion of the evidence was harmful error. *Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 608 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

An offer of proof is mandatory upon request. TEX. R. EVID. 103(c) ("The court *must allow* a party to make an offer of proof as soon as practicable." (emphasis added)). The trial court's failure to permit an offer of proof is reversible error upon a showing of harm. *Fletcher*, 57 S.W.3d at 606–07; TEX. R. APP. P. 44.1 (stating that no judgment may be reversed unless court of appeals concludes error probably caused rendition of improper judgment or probably prevented proper presentation of case on appeal). The trial court refused to allow Stary to submit an offer of proof upon her request to do so, and it erred by doing so. *See Fletcher*, 57 S.W.3d at 606–07; TEX. R. EVID. 103(c).

However, we cannot conclude that the trial court's error in refusing the offer of proof was harmful. *See Fletcher*, 57 S.W.3d at 606–07; TEX. R. APP. P. 44.1. The substance of the testimony is apparent from its context: Stary's allegation that Ethridge had physically abused her in front of the children. *See* TEX. R. EVID. 103(a) (stating that offer of proof is not required to preserve error in evidentiary ruling when substance of evidence is apparent from context). We have already concluded above

38

that this evidence is not relevant to the issues involved in the protective order. Because the evidence is not relevant, it lacks any tendency to make Stary's acts of family violence less probable. *See* TEX. R. EVID. 401(a). Therefore, any error in excluding the evidence or refusing Stary's request to make an offer of proof did not probably cause the trial court to render an improper judgment. *See Fletcher*, 57 S.W.3d at 606–07; TEX. R. APP. P. 44.1 (stating that no judgment may be reversed unless court of appeals concludes error probably caused rendition of improper judgment or probably prevented proper presentation of case on appeal). We conclude that any error in excluding the evidence was harmless.

We overrule Stary's fourth issue.

## Conclusion

We affirm the final protective order of the trial court.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Countiss and Farris.

Farris, J., dissenting.